# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD APPEL, *et al.*,<br><br>                 Plaintiffs,<br><br>v.<br><br>BOSTON NATIONAL TITLE AGENCY, LLC,<br><br>                 Defendant. | Case No. 18-cv-873-BAS-MDD<br><br>**ORDER DENYING DEFENDANT'S MOTION TO STAY**<br><br>**[ECF No. 43]** |

      Presently before the Court is Defendant Boston National Title Agency LLC's Motion to Stay, (ECF No. 43.)[1] Plaintiffs Howard Appel, David Cohen, and Ke'e Partners, LLC oppose the Motion, ("Opp'n," ECF No. 58), and Defendant filed a reply in support of the Motion, ("Reply," ECF No. 62.) The Court finds the Motion suitable for determination on the papers and without oral argument. Civ. L. R. 7.1(d)(1). For the reasons stated below, the Court **DENIES** the Motion to Stay.

---

[1] The Motion to Stay was combined with Defendant's motion for summary judgment. (ECF No. 42.) The Court suspended briefing on the motion for summary judgment because Plaintiffs had requested more discovery under Federal Rule of Civil Procedure 56(d) and requested the Court defer consideration of the motion for summary judgment. Judge Dembin is analyzing Plaintiffs' request. (*See* ECF No. 47.) However, the Motion to Stay remained pending, as Plaintiffs did not request the Court defer consideration on the Motion to Stay. When the Court refers herein to the Motion to Stay, it refers to the one memorandum of points and authorities filed for both motions located at ECF No. 42-3 (hereinafter, "Mot.").

## I. BACKGROUND

The facts of this case began in June 2017, when Plaintiffs placed a bid to purchase a property located in Fiji. The auction company for the sale was Concierge Auctions, LLC. Concierge informed Plaintiffs that they had won the auction, and Plaintiffs deposited $285,000 in escrow with Defendant Boston National, the escrow services company used by Concierge. ("Compl.," ECF No. 1, at ¶ 10 (Plaintiffs wired $100,000 to an escrow account owned by Boston National on June 21, 2017 and wired $185,000 on July 3, 2017).) However, the owners of the property ended up canceling the sale in July 2017.[2] Plaintiffs later realized there was no valid escrow instructions from the Fiji property owners that would allow Boston National to refuse to return the $285,000. (Opp'n 4.) Plaintiffs demanded Boston National return their funds on September 28, 2017, and they also allege they demanded Concierge instruct Boston National to do the same. (Compl. ¶ 15.) Boston National refused and Plaintiffs allege Boston National had improperly given Concierge "complete control" over the funds, which was a violation of Boston National's fiduciary duties to Plaintiffs. (*Id.* ¶ 16.)

Plaintiffs filed suit against Concierge and its employees in November 2017, alleging fraudulent inducement, concealment, misrepresentation, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), unfair competition law, and false advertising law. (17-cv-2263-BAS-MDD ("*Concierge*").) Boston National is not named in the *Concierge* matter. On April 13, 2018, the Court granted Concierge's motion to compel arbitration and ordered Plaintiffs and Concierge to proceed to arbitration. The Court stayed the action as to all parties and all claims.

Plaintiffs claim they then again asked Boston National to return the funds, but when Boston National deferred to Concierge and did not return the funds, Plaintiffs

---

[2] The Court understands the Parties debate how and when the sale was cancelled, (Mot. 3; Opp'n 3), but the details are immaterial for the purpose of this Motion.

"had no other recourse" but to file suit. (Opp'n 5.) On May 4, 2018, Plaintiffs filed the present action against Boston National. Plaintiffs assert claims of breach of fiduciary duty, negligence, and accounting. In sum, Plaintiffs allege Boston National delayed in returning the escrow funds for various reasons. (*See generally* Compl. (alleging *inter alia*, misrepresentation and collusion by Defendant).) Plaintiffs also allege Boston National conducts "illegal unlicensed real estate broker activities." (*Id.* ¶ 10.) Boston National returned the $285,000 on May 24, 2018, ("Witcher Decl.," ECF No. 49-3, at ¶ 4), but Plaintiffs request damages "proximately caused by Boston National's breach," punitive damages, and a forensic accounting of the escrow funds that were held by Boston National. (Compl., Prayer.)

## II.     LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). This power to stay proceedings includes the discretion to grant stays "pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 595 F.2d 857, 863 (9th Cir. 1979). This rule "does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id.* at 863–64 (citations omitted).

The inherent power of district courts to grant stays "calls for the exercise of sound discretion," by which a court must weigh the competing interests of the parties that would be affected by a grant or denial of a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). The Ninth Circuit has identified three competing interests that warrant the closest examination in this analysis: (1) the hardship or inequity upon the non-moving party that would result from granting the stay, (2) the hardship or inequity upon the moving party in being required to go forward after denial of the stay, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law that could be expected to result

from a stay. *Id.*; *see also Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005). Finally, "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009) (citing *Clinton v. Jones*, 520 U.S. 681, 708 (1997)).

## III. ANALYSIS

### A. <u>Balance of Hardship or Inequity</u>

The Court must first balance the "possible damage [to Plaintiffs] which may result from the granting of a stay," with "the hardship or inequity which [Defendant] may suffer in being required to go forward." *CMAX*, 300 F.2d at 268. If there is "even a fair possibility that the stay for which [Defendant] prays will work damage to some one else," then Defendant must show "a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255.

Here, Defendant argues Plaintiffs "will likely not be damaged at all" if the Court grants a stay. (Mot. 19.) Plaintiffs, for their part, do not point to any damage or prejudice that would result from a stay. (*See generally* Opp'n.) In contrast, Defendant argues it would face hardship without a stay. But Defendant only points to Plaintiffs' complicated theory of recovery in this case and Plaintiffs' multiple discovery requests and motions that Defendant must respond to as examples of hardship. (Reply 6.) "[B]eing required to defend suit, without more, does not constitute a clear case of hardship or inequity within the meaning of *Landis*." *Lockyear*, 398 F.3d at 1112; *see Klein v Cook*, No. 5:14-cv-3634-EJD, 2015 WL 2454056, at *2 (N.D. Cal. May 22, 2015) ("[T]he moving party must cite to something more than the intrinsic inconvenience arising from involvement in litigation."). A defendant cannot demonstrate hardship by pointing to inevitable discovery and motion practice, even if there is a possibility some of the litigation may be unnecessary. *Mendez v. Optio Solutions LLC*, 239 F. Supp. 3d 1229, 1234 (S.D. Cal. 2017). The Court finds no hardship to Boston National if this action is not stayed besides being required to defend itself in this suit.

| 1 | But the Court also finds that there would be little to no prejudice to Plaintiffs
| 2 | if this action is stayed.  In fact, much of Plaintiffs' damages appear to be attorneys'
| 3 | fees (given that the underlying $285,000 was eventually returned), and a stay in this
| 4 | action will obviously reduce Plaintiffs' need to litigate and thus lessen the amount of
| 5 | fees incurred.  Currently pending in this case are various discovery requests and
| 6 | Defendant's motion for summary judgment (which is currently on standstill while
| 7 | Judge Dembin analyzes Plaintiffs' discovery request made pursuant to Federal Rule
| 8 | of Civil Procedure Rule 56(d).)  There would be no prejudice that would result from
| 9 | a delay on these decisions; any harm would only be the postponement of any potential
| 10 | recovery for Plaintiffs if they succeed in the end.  *See CMAX*, 300 F.2d at 269
| 11 | (holding that where the party opposing the stay seeks money damages, a delay in
| 12 | recovery of damages "is not the kind of prejudice which should move a court to deny
| 13 | a requested postponement").  Further, given that no party provides the Court with an
| 14 | estimate of how long until arbitration between Plaintiffs and Concierge is complete,
| 15 | the length of the delay is undetermined.  *See Leyva v. Certified Grocers of Cal.*, 593
| 16 | F.2d 857, 864 (9th Cir. 1979) ("A stay should not be granted unless it appears likely
| 17 | the other proceedings will be concluded within a reasonable time in relation to the
| 18 | urgency of the claims presented to the court.").  Therefore, because neither party will
| 19 | be clearly harmed with or without a stay, the Court finds this factor to be neutral in
| 20 | its consideration of whether to impose a stay.

### B. The Orderly Course of Justice

| 22 | Next, the Court must consider "the orderly course of justice measured in terms
| 23 | of the simplifying or complicating of issues, proof, and questions of law which could
| 24 | be expected to result from a stay."  *CMAX*, 300 F.2d at 268; *see also United States*
| 25 | *v. Kiewit Pac. Co.*, 41 F. Supp. 3d 796, 815 (N.D. Cal. 2014) ("In determining
| 26 | whether a stay is warranted, courts consider . . . the judicial resources that would be
| 27 | saved by simplifying the case or avoiding duplicative litigation if the case before the
| 28 | court is stayed." (citing *CMAX*, 300 F.2d at 268)).

Of course, both the *Concierge* action and the present action stem from the same events and involve the exact same underlying facts. If the Court does not grant a stay, Defendant says Plaintiffs may obtain double recovery, once from Concierge (in the other matter) and again from Defendant (in this matter). (Mot. 20.) But Plaintiffs argue the matters are distinct that they will not receive double recovery from Concierge and Boston National. Plaintiffs agree the underlying $285,000 has been refunded, but, they were forced to incur "hundreds of thousands of dollars in legal fees against Concierge (which Plaintiffs seek to recover from Boston National here under the tort of another doctrine)." (Opp'n 6.) Further, Plaintiffs argue if they receive any recovery from Concierge, Boston National's obligation can be reduced to ensure the receipt of funds is not duplicative. (*Id.* at 13–14 (citing *Versey v. United States*, 626 F.2d 627, 633 (9th Cir. 1980).) Plaintiffs also allege misconduct against Boston National in its failure to "account for" the funds during the 11-month period it held the funds. (*Id.*) Plaintiffs allege "Boston National owed (and breached) duties to Plaintiffs that are independent of any duties owed and breached by Concierge." (*Id.* at 11.) Plaintiffs further argue that if Boston National had simply returned the funds, it would not have been part of the litigation in the first place, but Concierge would still subject to Plaintiffs' suit for various alleged illegal and fraudulent activities. (*Id.* at 12.)

Although the cases stem from the same events, the Court does not find the cases to be duplicative, and this case may proceed while the *Concierge* matter is stayed without wasting judicial resources or creating overlapping work. The two cases have the same foundation, but the essence and purpose of the actions differ. No matter how the *Concierge* matter is resolved, Plaintiffs maintain independent and separate allegations against Boston National that may proceed toward resolution.

## IV. CONCLUSION

The Court finds that the above factors balance in favor of denying Defendant's request to stay. Neither party will be harmed if this case proceeds forward, and the

| | |
|---|---|
| 1 | orderly course of justice does not counsel in favor of a stay.  The Court finds |
| 2 | Defendant has not met its burden in showing that a stay of this matter is justified. |
| 3 | Accordingly, the Court **DENIES** Defendant's Motion to Stay.  (ECF No. 43.) |
| 4 | **IT IS SO ORDERED.** |
| 5 | **DATED: April 30, 2019** |

Hon. Cynthia Bashant
United States District Judge