UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD APPEL, *et al.*,<br><br>                  Plaintiffs,<br><br>   v.<br><br>BOSTON NATIONAL TITLE AGENCY, LLC,<br><br>                  Defendant. | Case No. 18-cv-873-BAS-MDD<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**<br><br>**[ECF No. 41]** |

Presently before the Court is Plaintiffs Howard Appel, David Cohen, and Ke'e Partners, LLC's Motion for Leave to File First Amended Complaint, ("Mot. ECF No. 41). Defendant Boston National Title Agency, LLC filed an opposition to the Motion, ("Opp'n," ECF No. 49), and Plaintiffs filed a reply in support of the Motion, ("Reply," ECF No. 53.)[1] The Court finds this Motion suitable for determination on the papers and without oral argument. Civ. L. R. 7.1(d)(1). For the reasons stated below, the Court **GRANTS** Plaintiffs' Motion.

---

[1] Defendant objects to the declaration of Benjamin Reynolds and exhibits attached to Plaintiffs' Reply, claiming the documents are improper "late-filed evidence." (ECF No. 55.) Mr. Reynolds attaches deposition transcripts to his declaration and Defendant argues it is prejudiced by the addition of "new facts at this late stage." (*Id.* at 3.) The Court does not rely on the declaration or its attachments and therefore does not consider Defendant's objections.

– 1 –

## I. BACKGROUND

The facts of this case began in June 2017, when Plaintiffs placed a bid to purchase a property located in Fiji. The auction company for the sale was Concierge Auctions, LLC. Concierge informed Plaintiffs that they had won the auction, and Plaintiffs deposited $285,000 in escrow with Defendant Boston National, the escrow services company used by Concierge. ("Compl.," ECF No. 1, at ¶ 10 (Plaintiffs wired $100,000 to an escrow account held by Boston National on June 21, 2017 and $185,000 on July 3, 2017).)[2] However, the owners of the property ended up canceling the sale in approximately July 2017.[3] (Mot. 2.) On September 14, 2017, Plaintiffs, through an attorney, requested Defendant provide them with "escrow instructions" from the Fiji property owners. (ECF No. 41-2, at 66.)[4] Defendant's representative responded by asking, "By escrow instructions, do you mean an Escrow Agreement?" and noted that no agreement was signed between Defendant and Plaintiffs. (*Id.*) Plaintiffs demanded Boston National return their funds on September 28, 2017, and they also allege they demanded Concierge instruct Boston National to do the same. (ECF No. 41-2, at 77; Compl. ¶ 15.) Boston National refused and Plaintiffs allege Boston National had improperly given Concierge "complete control" over the funds. (Compl. ¶ 16.)

Plaintiffs filed suit against Concierge and its employees in November 2017, alleging inducement, concealment, misrepresentation, and violations of the

---

[2] Defendant filed evidentiary objections to the declaration of Plaintiffs' counsel Benjamin Reynolds and to various exhibits provided by Plaintiffs. (ECF No. 49-1.) Defendant notes it does not dispute the underlying facts behind much of the declaration, namely, that Plaintiffs deposited $285,000 with Defendant in 2017 which was returned in May 2018. But Defendant argues the declaration and documents are irrelevant and that Mr. Reynolds does not have firsthand knowledge of the information within the documents. These objections are meaningless considering Defendant agrees that the important facts are correct, and the Court does not rely on Mr. Reynolds' account, but on the facts. The Court **OVERRULES** the objections.

[3] The Court understands the parties debate how and when the sale was cancelled, and the Court does not opine one way or the other on this issue.

[4] Plaintiffs attached all exhibits as one large attachment, (ECF No. 41-2), thus the page references refer to the CM/ECF pincite.

Racketeer Influenced and Corrupt Organizations Act ("RICO"), unfair competition law, and false advertising law. (17-cv-2263-BAS-MDD ("*Concierge*").) Boston National is not named in the *Concierge* matter. On April 13, 2018, the Court granted Concierge's motion to compel arbitration and ordered Plaintiffs and Concierge to proceed to arbitration. The Court stayed the action as to all parties and all claims.

On May 4, 2018, Plaintiffs filed the present action against Boston National. Plaintiffs assert claims of breach of fiduciary duty, negligence, and accounting. In sum, Plaintiffs allege Boston National delayed in returning the escrow funds for various reasons. (*See generally* Compl. (alleging *inter alia*, misrepresentation and collusion).) Plaintiffs also allege Boston National conducts "illegal unlicensed real estate broker activities." (*Id.* ¶ 10.) Boston National returned the $285,000 on May 24, 2018, ("Witcher Decl.," ECF No. 49-3, at ¶ 4), but Plaintiffs request damages "proximately caused by Boston National's breach," punitive damages, and a forensic accounting of the escrow funds that were held by Boston National. (Compl., Prayer.) Plaintiffs also claim they incurred "hundreds of thousands of legal fees" before the funds were returned. (Mot. 6.)

The parties proceeded to discovery. Plaintiffs state on December 14, 2018, they discovered for the first time that there were no valid escrow instructions regarding the return of the $285,000. (*See* ECF No. 32-1 at 52 (Boston National admitting in its response to a request for admission that "it did not receive any instructions from [the Fiji Property owners] regarding the $100,000 deposited by [Plaintiff Ke'e Partners]"; *see also id.* at 60 (same response as to the $185,000).) Further, on December 18, 2018, Plaintiffs state they discovered for the first time that Boston National had "ceded its fiduciary duties and control over" the escrow funds to Concierge. (Opp'n 9; *see* ECF No. 41-2, at 70 (email from a Concierge representative stating, "[w]e [Concierge] appreciate your [Boston National] cooperation and that you will not disburse the $285k in escrow unless we provide instructions."). Plaintiffs state this "triggered Plaintiffs to conduct additional

research into" Defendant's status and then discovered Defendant "does not appear to be registered with the Secretary of State to do business in California, and does not appear to be a licensed escrow agent." (Mot. 3 n.6.)

After learning that there were no valid escrow instructions, that Defendant gave control of the funds to Concierge, and that Defendant could not lawfully perform escrow services in California, Plaintiffs began meeting and conferring with Defendant on December 20, 2018 regarding their intent to amend their complaint. (Mot. 3.) Obviously, the meeting did not resolve the issue. On January 25, 2019, Plaintiffs requested Judge Dembin amend the scheduling order to extend the pleading deadline and for leave to file a first amended complaint. (ECF No. 32.) On February 19, 2018, Judge Dembin declined to amend the pleading deadline and directed Plaintiffs to seek leave to file an amended complaint from this Court if they wished to do so. (ECF No. 37.)[5] Plaintiffs filed the present Motion on March 7, 2019.

Plaintiffs seek to add six new claims to their current three-claim complaint. The proposed new claims are: (1) Violations of California Business & Professions Code section 17200 *et seq*. ("UCL"); (2) Fraudulent Concealment; (3) Fraudulent Misrepresentation; (4) Negligent Misrepresentation; (5) Violations of California Business & Professions Code section 17500 *et seq*. ("False Advertising Law"); and (6) Conversion.

## II. LEGAL STANDARD

### A. Modification of Scheduling Order Under Rule 16(b)

Federal Rule of Civil Procedure 16(b) provides that the district court must issue a scheduling order that limits the time to join other parties, amend the pleadings, complete discovery, and file motions. Once in place, "[a] schedule may be modified

---

[5] Both parties misinterpret Judge Dembin's order. He did not "invite" Plaintiffs to file a motion, as Plaintiffs state, nor did he "deny" Plaintiffs leave to amend, as Defendant argues. He did not rule on the merits of the issue, but only directed Plaintiffs toward the correct path given that Plaintiffs were requesting leave to amend after the pleading deadline had passed. Such a request must be presented to the district judge.

– 4 –

only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "good cause" requirement primarily considers the diligence of the party seeking the amendment. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* (internal citation and quotation marks omitted). "If [the] party was not diligent, the inquiry should end." Id.

In interpreting the "good cause" requirement under Rule 16(b), the court considers, primarily, "the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. As a secondary consideration, the court considers the degree of prejudice to the opposing party. *Id.* "A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint." *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999).

If the court finds that there is good cause to modify the schedule, the court then turns to Rule 15(a) to determine whether the amendment sought should be granted. *See Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999) ("As the Ninth Circuit explained in [*Johnson*], once the district court has filed a pretrial scheduling order pursuant to Rule 16 which establishes a timetable for amending pleadings, a motion seeking to amend pleadings is governed first by Rule 16(b), and only secondarily by Rule 15(a).").

B.     **Amendment of Complaint Under Rule 15(a)**

Under Federal Rule of Civil Procedure 15(a), a plaintiff may amend its complaint once as a matter of course within specified time limits. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

While courts exercise broad discretion in deciding whether to allow

– 5 –

amendment, they have generally adopted a liberal policy. *See United States ex rel. Ehmcke Sheet Metal Works v. Wausau Ins. Cos.*, 755 F. Supp. 906, 908 (E.D. Cal. 1991) (citing *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1324 (9th Cir.), *rev'd on other grounds*, 459 U.S. 810 (1982)). Accordingly, leave is generally granted unless the court harbors concerns "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The non-moving party bears the burden of showing why leave to amend should not be granted. *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 530–31 (N.D. Cal. 1989).

### III. ANALYSIS

#### A. Modification of Scheduling Order Under Rule 16(b)

The basis of Plaintiffs' proposed amendment is the allegation that Defendant misrepresented it was a licensed escrow agent and that Defendant had no basis to withhold Plaintiffs' escrow funds or cede control of the funds to Concierge. Plaintiffs claim their allegations are based on Defendant's

> illegal unlicensed real estate broker activities within California, through which it fraudulently solicited and induced them into bidding for the Fiji Property; fraudulently used shill bidders to induce them into increasing their bid; and fraudulently misrepresented that they had "won" the auction despite actual pre-auction knowledge of the Fiji Property owner's refusal to sell.

(Mot. 5 n.9.) Plaintiffs claim their allegation that Defendant is unlicensed is the basis for their UCL, false advertising, and concealment claims. (Mot 16.) Defendant's "admission" that it did not receive any escrow instructions is the basis for Plaintiffs' fraud, breach of fiduciary duty, and negligence claims. (*Id.*) Plaintiffs claim the evidentiary source of their allegations was revealed in discovery. Therefore Plaintiffs argue they did not delay in requesting amendment once they learned the

basis of the new allegations, and there is good cause to amend the scheduling order.

First, Defendant stresses that Plaintiffs did not serve interrogatories or requests for admission until after the deadline to amend the complaint (October 8, 2018) and after Defendant served its own written discovery. (Opp'n 13.)[6] This appears to be true, however, Plaintiffs started the discovery process on August 14, 2018 by sending Defendant requests for production, (Mot. 6); the fact that Plaintiffs did not begin <u>all</u> discovery at this time does not show a lack of diligence.

Next, Defendant argues Plaintiffs actually became aware that there were no separate escrow instructions and "no contract or instructions with the sellers" as early as September 2017. (Opp'n 2, 14.) But, the evidence Defendant cites for this proposition does not support this position. (*Id.*) It is true that Plaintiffs were aware long ago that Boston National was the escrow agent for the sale, and that Plaintiff Appel had used Boston National as an escrow agent for various transactions in the past. (Exhibit A to ECF No. 49-2, at 25:22–26:1.) But these facts alone are not the basis of the allegations. The allegations in the proposed amended complaint relate to the alleged misconduct that Plaintiffs state they later discovered, i.e. *inter alia*, that Defendant knew the sale was cancelled but did not return Plaintiffs' funds, but instead deferred to Concierge; and Defendant misrepresented that it was licensed to perform escrow services in California.

Although Plaintiffs could have conducted a public records search at any time, the Court understands that Plaintiffs had no reason to believe Defendant was not licensed, and only felt the need to conduct a search after receiving certain discovery responses. And there is no evidence that Plaintiffs were aware of the facts and theories supporting amendment earlier than when they received certain discovery responses. Thus, Plaintiffs are not seeking to add legal theories that they were aware of when they filed their original complaint, nor are they changing their "litigation

---

[6] Defendant served its first set of Special Interrogatories, Requests for Admission, and Requests for Production of Documents on October 9, 2018. ("Dalton Decl.," ECF No. 49-2, ¶ 4.)

– 7 –

strategy" as Defendant suggests. (Opp'n 11.)

The Court finds Plaintiffs acted diligently in moving to amend the scheduling order after discovering the new information. After receiving the relevant documents on December 14 and 18, 2018, Plaintiffs met and conferred with Defendant only a few days later regarding their desire to amend. (Mot. 3); *contra Schwerdt v. Int'l Fidelity Ins. Co.*, 28 F. App'x 715, 719 (9th Cir. 2002) (finding no good cause when the plaintiff knew of the basis for his proposed amendment one month before informing defendant of his intent to amend). When the parties were unable to resolve the issue, Plaintiff filed a motion shortly afterwards. The Court finds Plaintiff has been diligent in this process and therefore finds good cause to amend the scheduling order to allow amendment.

### B. <u>Amendment of Complaint Under Rule 15(a)</u>

Rule 15 governs amendments to pleadings and encourages courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court now looks for evidence of undue delay, Plaintiffs' bad faith or dilatory motive, any failure to cure deficiencies by previous amendments, undue prejudice to Defendant, or futility of amendment. *See Foman*, 371 U.S. at 182.

The Court finds no evidence of undue delay, given this action began approximately one year ago and there is no evidence Plaintiffs unreasonably delayed in requesting amendment after learning what they deemed to be the pertinent facts. It is true that Defendant's motion for summary judgment is pending, and that "[t]he timing of the motion [for leave to amend], after the parties had conducted discovery and a pending summary judgment motion had been fully briefed, weighs heavily against allowing leave." *Schlacter–Jones v. General Tele. of California,* 936 F.2d 435, 443 (9th Cir. 1991) (abrogated on other grounds by *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683 (9th Cir. 2001)). But in so holding, the *Schlacter–Jones* court reasoned, "[a] motion for leave to amend is not a vehicle to circumvent summary judgment." *Id.* The Court does not find that Plaintiffs here are seeking to

avoid summary judgment by adding claims, as the present Motion was filed one day before the motion for summary judgment and there is no indication Plaintiffs are seeking to add more claims simply to circumvent the currently requested judgment or to delay the proceedings.

There is also no evidence of bad faith, and the Court notes that this is Plaintiffs' first request to amend their complaint. As to prejudice, Defendant argues it will be prejudiced by the amendment. And indeed, this case has progressed considerably since its filing in May 2018. Defendant's motion for summary judgment is pending, and discovery has been closed since March 8, 2019. (*See* ECF No. 22 (scheduling order).) However, the Court would not allow an amended complaint of this type without allowing discovery on the new claims, as the Court agrees the new claims broaden the breadth of this case. And certainly, the reopening of discovery will delay the proceedings of this case. Having to broaden one's defense strategy and engage in more discovery would burden any defendant. But, all of the proposed new claims arise from the same factual allegations in Defendant's failure to return the escrow funds and the Court does not see a "radical[] shift" in the nature of this case, as Defendant presents. (Opp'n 19 (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990).) The case still has the same foundation and purpose, now with broader and more numerous allegations. While Defendant will be prejudiced by the amendment, the Court does not find the prejudice to be unreasonable.

Defendant finally argues the proposed amendments are futile. Defendant argues there is no evidence that Plaintiffs incurred any damages, their claim does not meet the amount in controversy of $75,000, and Plaintiffs failed to join Concierge as a party. (Opp'n 17–18.) As to the first two arguments, Plaintiffs argue they are entitled to attorney's fees incurred to recover the funds, interest on the escrow funds, and any ill-gotten gains from Boston National's misuse of the funds. Plaintiffs also assert the theory of "tort of another." Based on those allegations, it cannot be

determined to a legal certainty that Plaintiffs fail to meet the amount in controversy requirement. *See* 28 U.S.C. § 1332(a); *Naffe v. Frey*, 789 F.3d 1035 1039–40 (9th Cir. 2016) (setting forth elements of diversity jurisdiction and explaining that the "legal certainty" test requires a "district court [to] accept the amount in controversy claimed by the plaintiff unless it can declare to a legal certainty that the case is worth less").

Father, as to the failure to join Concierge as an indispensable party, Boston National devotes only one paragraph to the argument in its opposition, the gist of which is that Defendant's participation in the business deal arose out of the auction by Concierge. (Opp'n 18.) Defendant conclusory argues Concierge "is at the nexus of this matter and its absence creates the possibility of conflicting judgments and prejudice to the parties." (*Id.*) Defendant did not previously file a motion under Rule 12(b)(7). The parties' relationship is the same now as it was in the prior complaint, and the Court declines to convert one paragraph of Defendant's opposition to a motion under Rule 12(b)(7) and engage in a detailed analysis of failure to join a party under Rule 19 at this stage. Defendant has not met its burden in showing joinder is necessary. In sum, the Court rejects Defendant's futility arguments because Defendant has not shown that Plaintiffs are unable to obtain any relief from their proposed amendments. "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182.

Defendant has not met its burden in establishing why leave to amend should not be granted. The Court grants Plaintiffs leave to file a first amended complaint.

### C. <u>Defendant's Request for Leave to Conduct Further Discovery</u>

Defendant requests the following if the Court grants Plaintiffs leave to file an amended complaint:

(1) it be granted leave to serve a new round of written interrogatories and requests for admission on Plaintiffs; (2) discovery be limited to the

transactions between Plaintiffs and Boston National—excluding unrelated third party private information; (3) discovery and pre-trial motion practice be reopened; and (4) the Court, after discovery and motion practice is reopened, grant a continuation of the discovery and motion deadlines and trial date at least 180 days to accommodate the radical shift in the nature of the case.

(Opp'n 20.) Plaintiffs do not respond to Defendant's requests. (*See generally* Reply.) The Court finds good cause to re-open discovery limited to the new allegations in Plaintiffs' first amended complaint. The parties are to meet and confer to prepare and submit a joint discovery plan and scheduling order to Judge Dembin, who will determine the scope of the new discovery and set a schedule for this case going forward.[7]

Further, the Court finds it is proper to **DENY WITHOUT PREJUDICE** Defendant's motion for summary judgment. (ECF No. 42). It would not be economical for the Court to analyze Defendant's motion for summary judgment at this time and instead is most prudent to allow Defendant to file a new motion for summary judgment after it has conducted discovery on all of Plaintiffs' claims. *See U.S. v. W.R. Grace*, 526 F.3d 499, 509 (9th Cir. 2008) (noting the court has inherent authority to manage its docket).

/ / /
/ / /
/ / /

---

[7] Plaintiffs do not address whether or not they also request leave to engage in further discovery related to their new claims. The parties are to address this issue in the discovery plan they submit to Judge Dembin.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for leave to amend, (ECF No. 41), and **DENIES WITHOUT PREJUDICE** Defendant's motion for summary judgment, (ECF No. 42). The Court grants the parties leave to re-open discovery pertaining only to the new claims in Plaintiffs' amended complaint. Plaintiffs **SHALL** file the amended complaint attached to their motion <u>within five (5) days of the issuance of this Order</u> and the parties **SHALL** submit a joint discovery plan and scheduling order to Judge Dembin <u>within fourteen (14) days of the issuance of this Order.</u>

**IT IS SO ORDERED.**

**DATED: May 17, 2019**

Hon. Cynthia Bashant
United States District Judge