# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD APPEL, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> BOSTON NATIONAL TITLE AGENCY, LLC, <br><br> Defendant. | Case No. 18-cv-873-BAS-MDD <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** <br><br> **[ECF No. 77]** |

Boston National Title Agency, LLC's moves to dismiss Plaintiffs' First Amended Complaint. ("Mot.," ECF No. 77.) Plaintiffs Howard Appel, David Cohen, and Ke'e Partners LLC oppose the Motion, ("Opp'n," ECF No. 80). The Court finds resolution of this matter is suitable without the need for oral argument. *See* Civ. L.R. 7.1(d)(1). For the reasons discussed below, the Court **GRANTS IN PART AND DENIES IN PART** Boston National's Motion.

## I. BACKGROUND

In June 2017, Plaintiffs signed a Bidder Registration Agreement with Concierge Auctions, LLC, to participate in Concierge's "Summer Portfolio Sale" auction of real estate properties. The Agreement provided that escrow services would be provided by Boston National Title. (First Amended Complaint, "FAC,"

– 1 –

ECF No. 73, ¶ 9.) Plaintiffs wired $100,000 to Boston National to be held in Boston National's escrow account. Plaintiffs entered the auction and bid on a property in Fiji ("Fiji Property"). (*Id.*) On July 1, 2017, Plaintiffs were declared the winning bidder for the Fiji Property. (*Id.* ¶ 12.) Concierge emailed Plaintiffs informing them they had won and requested they wire an additional $185,000 to the escrow account. Concierge also emailed the Fiji Property owners congratulating them on the sale and sent a purchase contract. (*Id.* ¶ 13.) The Fiji Property owners responded to Concierge, stating they were surprised by the email because they had informed Concierge a few days prior that the auction would not go forward. (*Id.* ¶ 14.) Boston National was copied on the above emails. Plaintiffs state they were unaware the Fiji Property owners were refusing to sell the property and therefore wired the additional $185,000 to Boston National's escrow account on July 3, 2017. (*Id.* ¶ 15.)

Plaintiffs subsequently discovered the Fiji Property owners were refusing to sell and negotiated with the owners from July 3, 2017 to September 13, 2017. (*Id.* ¶ 16.) Plaintiffs told Boston National not to release the $285,000 in escrow funds without Plaintiffs' permission. (*Id.*) The negotiations were unsuccessful, and Plaintiffs requested Boston National provide them with "the escrow instructions." (*Id.* ¶¶ 16, 17.) Boston National responded, appearing to have no knowledge of any escrow instructions, and stated that no escrow agreement was signed between Plaintiffs and Boston National. (*Id.* ¶ 18.) Boston National told Plaintiffs it had "a fiduciary relationship with Concierge" and then asked a Concierge representative to inform Plaintiffs "of what is to take place if the seller refuses to sign the contract." (*Id.* ¶ 19.) Boston National stated if an agreement could not be reached, it would "interplead the funds to the appropriate court for disposition." (*Id.*) Plaintiffs infer that Concierge instructed Boston National not to disburse the funds until Concierge said so. (*Id.* ¶ 20.)

On September 28, 2017, Plaintiffs demanded Boston National return their funds, and demanded Concierge tell Boston National to do the same. (*Id.* ¶ 21.)

Boston National did not do so, appearing to "have given Concierge complete control" over the funds. (*Id.* ¶ 22.) Plaintiffs then filed suit against Concierge for the return of the escrow funds and "hundreds of thousands in attorneys' fees" incurred. (*Id.* ¶ 23; *see* 17-cv-2263-BAS-MDD ("the *Concierge* case").) Concierge commenced an arbitration proceeding in New York and told Plaintiffs if they paid $37,500, Concierge would dismiss the proceeding and would instruct Boston National to release the funds. (FAC ¶ 24.) Plaintiffs did not pay, and the *Concierge* case proceeded. This Court stayed the *Concierge* case and directed the parties to arbitration. (17-cv-2263, ECF No. 30.)

Plaintiffs again requested Boston National return the funds or provide instructions. (*Id.* ¶¶ 25, 26.) Plaintiffs allege Boston National refused to do so because it was using the funds "for the benefit of itself, Concierge, or another third party." (*Id.* ¶ 27.) Plaintiffs then filed the present suit against Boston National on May 4, 2018. Boston National returned the $285,000 to Plaintiffs on May 24, 2018. (*Id.* ¶ 40.)

The procedural history of this case is also important for reasons that will become apparent later in this Order. Plaintiffs' original complaint against Boston National was for breach of fiduciary duty, negligence, and an accounting. Boston National answered the complaint. (ECF No. 7.) The parties had various discovery disputes, the most notable being Plaintiffs' request for all documents related to the escrow account into which Plaintiffs deposited the $285,000. This escrow account, held by Wells Fargo Bank, is a repository of funds from customers of Concierge and Boston National. Boston National produced redacted statements for the account so as not to disclose the identification of the customers who also had funds in the account. Plaintiffs sought unredacted statements, and Judge Dembin and this Court denied the request. (ECF No. 82.)

In the midst of the discovery disputes, Plaintiffs sought leave to file an amended complaint, which the Court granted. The amended complaint now contains

nine claims. Boston National seeks to dismiss the amended complaint in its entirety.

## II. LEGAL STANDARD

A complaint must plead sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

## III. ANALYSIS

The Court addresses each cause of action in turn.

### A. Accounting

While the $285,000 has been returned, Plaintiffs request an accounting of those funds, as "it is unclear" whether the funds were the original escrow funds, or whether Boston National used those funds and "paid Plaintiffs with someone else's money." (FAC ¶ 40.) Plaintiffs also request an accounting of any interest Boston National earned from the funds during the time it held them and "any use of profits"

realized through the funds. (*Id.* ¶¶ 39, 41.)

### 1. Waiver

Before addressing the merits of this cause of action, the Court turns to Plaintiffs' argument that Boston National has waived its ability to move to dismiss this claim because it did not move to dismiss the claim in the original complaint. Both parties cite to *Townsend Farms v. Goknur Gida Madderleri Enerji Imalat Ithalat Ihracat Ticaret Ve Sanayi A.S.*, No. SACV150837DOCJCGX, 2016 WL 10570248, at *6 (C.D. Cal. Aug. 17, 2016), where the court noted "[t]he Ninth Circuit has not squarely addressed the issue of whether amending or consolidating a complaint allows an opposing party a second opportunity to file a 12(b)(6) motion, after the objection has initially been waived." But the *Townsend* court ultimately concluded, "amending or consolidating a complaint does not give defendants a second opportunity to raise waived objections" and denied the motion to dismiss for the waived claims. *Id.* It made this conclusion after citing cases where "courts have allowed the defendant to bring 12(b) motions only as to claims first alleged in the amended complaint." *Id.*

Boston National distinguishes *Townsend* by arguing that the facts have changed since it filed its answer, namely, at the time it did so, the $285,000 had not been returned. ("Reply," ECF No. 81, at 2.) Indeed, Plaintiffs have expanded their accounting cause of action from asking for an accounting of the funds each day they were in the escrow account, (ECF No. 1, ¶ 33), to an accounting of the funds, interest, and any profits Boston National gained through use of the funds, (FAC ¶ 39). The expansion of the cause of action created more defenses. "A party is not precluded from making a second motion based on a defense that he or she did not have reasonable notice of at the time that party first filed a motion to dismiss." 5C Wright & Miller, Federal Practice & Procedure, § 1388 (3d ed. 2019)

The Court understands that Boston National did not originally move to dismiss the accounting claim knowing that it had the $285,000 in its possession and not

knowing that Plaintiffs were alleging Boston National was unjustly enriched. However, the funds have been returned and Plaintiffs still seek an accounting for damages from the funds, therefore the Court understands Boston National now argues that an accounting is unnecessary and that it only moved to dismiss the claim when it had a sufficient defense. Although the claim was presented in both complaints, Boston National should not be precluded from moving to dismiss the claim now, based on the changed events and available defenses. The Court will analyze the merits of the claim.

### 2. Analysis

"A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting." *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009). "An action for accounting is not available where the plaintiff alleges the right to recover a sum certain or a sum that can be made certain by calculation." *Id.* (citations omitted).

Plaintiffs have alleged a fiduciary relationship between them and Boston National. Plaintiffs admit the escrow funds, which have been returned, are a sum certain and the interest on those funds is also certain. But Plaintiffs further allege Boston National has "benefitted from the use" of the funds, "the exact amount of which is due and owing to Plaintiffs as restitution and is only ascertainable through an accounting." (Opp'n at 5.)

Boston National curiously fails to respond to this specific argument of the restitution in its Reply, only arguing that the escrow funds and the interest are certain; something Plaintiffs have not disputed. (Reply at 3.) The Court finds Plaintiffs have plausibly pled an accounting cause of action for Boston National's unjust gains from use of the funds, the amount of which is not certain. The Court reminds Plaintiffs that the claim for accounting of the funds will not include Plaintiffs' ability to receive the unredacted banks statements on which the Court has already issued rulings. The

Court **DENIES** the motion to dismiss this cause of action.

### B. <u>Violation of California Unfair Competition Law ("UCL")</u>

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each prong of the UCL is a separate and distinct theory of liability." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). Plaintiffs first proceed under the "fraudulent" prong. Thus, Plaintiffs must satisfy Rule 9(b)'s heightened pleading standard by stating with particularity the circumstances constituting the allegedly fraudulent practice, including the who, what, when, where, and how of the misconduct charged. *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010); *Kearns*, 567 F.3d at 1125.

Plaintiffs allege Boston National's conduct is fraudulent because the company falsely advertised it was licensed to do business in California, "that it was the exclusive escrow agent for Concierge, that it could conduct business and perform escrow services in the State of California, and that it was an expert in the field." (FAC at p. 2 & ¶¶ 8, 9.) Plaintiffs allege this induced them to sign the Bidder Agreement.

**Vicarious Liability.** First, Boston National argues it is not responsible for anything in the Bidder Agreement as it was not a party to that agreement, nor is it responsible for anything Concierge told Plaintiffs. (Mot. at 9.) The Court agrees that Plaintiffs have not pled Boston National had any responsibility for the information disclosed in the Bidder Agreement. The Agreement was between Plaintiffs and Concierge, and any information Concierge provided Plaintiffs cannot be imputed to Boston National. "[U]nfair competition claims cannot be predicated on vicarious liability." *Parent v. Millercoors LLC*, No. 3:15-CV-1204-GPC-WVG, 2016 WL 3348818, at *7 (S.D. Cal. June 16, 2016) (citing *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002)). The claims concerning Boston National's "misrepresentations that all escrow services related to the Fiji Property, 'shall be

– 7 –

exclusively provided by Boston National Title ("Escrow Agent",)' contained within the Bidders Agreement" (FAC ¶ 43) and all other claims of misrepresentations made by Concierge or in the Bidder Agreement are **DISMISSED**.

**Reliance.** The only claim that remains under this cause of action is that Boston National represented it can perform escrow services in California when it cannot. (FAC ¶ 8.) This information allegedly appears on Boston National's website. (*Id.*) Boston National responds that Plaintiffs have not alleged they viewed Boston National's website prior to participating in the auction. (Mot. at 10.) Further, Plaintiffs admit the Bidder Agreement provided a North Carolina address for Boston National. (FAC ¶ 9.)

For a fraudulent business practices claim, the UCL mandates that the plaintiff demonstrate "actual reliance" upon the defendant's misrepresentation or omission. "[P]laintiff must show that he personally lost money or property because of his own actual and reasonable reliance on the allegedly untrue or misleading statements." *Rosado v. eBay, Inc.*, 53 F. Supp. 3d 1256, 1264–65 (N.D. Cal. 2014). Reliance can be demonstrated by showing that "but-for defendant's fraudulent conduct," plaintiff "in all reasonable probability" would not have engaged in the injury-producing action. *In re Actimmune Mktg. Litig.*, No. 08–02376–MHP, 2009 WL 3740648, at *8 (N.D. Cal. Nov. 6, 2009) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009).

Here Plaintiffs only assert in a conclusory fashion that they relied on Boston National's representation that it could conduct services in California. (FAC ¶ 59.) But this is insufficient. Plaintiffs do not assert how or why they believed Boston National was licensed in California before entering into the agreement with Concierge, or even that they had any information at all about Boston National before sending the escrow funds. Plaintiffs do not assert they looked up Boston National's webpage before entering into the agreement nor do they argue they only agreed to participate in the auction because Boston National was licensed locally. Instead,

Plaintiffs were in possession of the Bidder Agreement which lists Boston National's address in North Carolina, and they do not allege they asked anyone about this representation or expressed concerns about Boston National's location. Therefore Plaintiffs have not plausibly pled they relied on any specific misrepresentation or omission before entering into the agreement. *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010) (affirming dismissal of plaintiff's UCL claim where the plaintiff failed to allege that he ever visited the defendant's website and read the alleged misrepresentation).[1] In sum, Plaintiffs have not pled the required "but-for" element. *See In re Actimmune*, 2009 WL 3740648, at *13 (holding under Rule 9(b), the causation elements must be "pled with specificity").

Without reliance, Plaintiffs cannot plead a claim under the "fraudulent prong" of the UCL. Further, because Plaintiffs' claim under the "unlawful" prong of the UCL stems from the same allegations, Plaintiffs' lack of reliance also necessitates dismissal of the claim. *See Swearingen v. Pac. Foods of Oregon, Inc.*, No. 13–cv–04157–JD, 2014 WL 3767052, at *2 (N.D. Cal. July 31, 2014) (holding the "actual reliance" requirement "applies equally to the 'unlawful' prong of the UCL when the predicate unlawfulness is misrepresentation and deception" (internal quotation marks omitted)). The Court **DISMISSES** these claims.

Any remaining UCL claims that are not predicated on misrepresentation do not require the pleading of "actual" reliance. *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1003 (N.D. Cal. 2014). The UCL "provides a cause of action for violations of any other law as an unlawful practice." *Robinson v. Hunger Free Am.*,

---

[1] Further, some courts have found that causation "can be inferred from the misrepresentation of a material fact." *See e.g.*, *Chapman v. Skype Inc.*, 200 Cal. App. 4th 217, 229 (2013). But as noted herein, Plaintiffs have not alleged they even viewed the alleged misrepresentation or how the misrepresentation changed their conduct. Thus, the misrepresentation cannot be deemed "material" here. *See Figy v. Amy's Kitchen, Inc.*, No. CV 1303816 SI, 2013 WL 6169503, at *4 (N.D. Cal. Nov. 25, 2013) ("Although there may be an inference of reliance upon a showing of materiality, to adequately allege reliance, a plaintiff must still at a minimum allege that he saw the representation at issue.").

*Inc.*, No. 1:18-cv00042-LJO-BAM, 2018 WL 2563809, at *4 (E.D. Cal. June 4, 2018). Plaintiffs allege "Boston National has violated [the UCL] through its negligence and by breaching its fiduciary duties." (Opp'n at 7.) The Court finds below that Plaintiffs' negligence and breach of fiduciary claims may proceed, thus, the UCL claim predicated on these claims may also proceed. *See Robinson*, 2018 WL 2563809, at *4 ("[A] UCL claim under the unlawful prong is dependent on an underlying offense.").

### C. <u>Violation of False Advertising Law ("FAL")</u>

Plaintiffs allege Boston National violated the FAL because it "advertised and adopted . . . the position that it was the exclusive escrow agent for Concierge, that it could conduct business and perform escrow services in the State of California, and that it was an expert in its field." (FAC ¶ 70.)

Plaintiffs provide no information as to how Boston National may have "adopted" Concierge's statements. The fact that Concierge may have advertised Boston National in a certain way, without Boston National's contribution, is not a claim against Boston National. "In the context of false advertising, there is no duty to investigate the truth of statements made by others." *Parent*, 2016 WL 3348818 at *7 (citing *Emery*, 95 Cal. App. 4th at 960).

Thus, the Court turns to the allegations that Boston National made false representations. Standing under California's False Advertising law is limited to "any person who has suffered injury in fact and has lost money or property as a result of" a defendant's alleged misrepresentations. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 321 (2011) (quoting California Business & Professions Code § 17535). Most courts have interpreted the FAL's "as a result of" language to require that plaintiffs "allege their own reliance on the alleged misrepresentations." *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 866–67 (N.D. Cal. 2015) (citing cases).

As Plaintiffs' false advertising claims stem from the same allegations as their

unfair competition claims, the same analysis as above applies here. Without a plausible pleading of Plaintiffs' reliance on any false advertisements, there can be no false advertising claim. The Court **DISMISSES** this claim.

### D. **Fraudulent Concealment, Fraudulent Misrepresentation, and Negligent Misrepresentation**

Plaintiffs' fraudulent concealment, fraudulent misrepresentation, and negligent misrepresentation claims are predicated on two separate allegations. First, Plaintiffs allege Boston National knew on July 3, 2017 that the Fiji Property owners refused to sell the Property but did not disclose this to Plaintiffs. (FAC ¶ 51.) Plaintiffs allege Boston National was the "only means" for Plaintiffs to discover this concealed fact, and if Plaintiffs had known the fact, they would not have attempted to purchase the Fiji Property and would have requested the return of the funds earlier. (*Id.* ¶ 53.)

This allegation is contradictory and does not sufficiently allege misrepresentation or fraud. Plaintiffs allege on July 3, 2017, Boston National became aware that the sale had fallen through, yet it concealed this from Plaintiffs. (*Id.* ¶ 13.) But Plaintiffs also admit they themselves were negotiating with the Fiji Property owners "in an attempt to resurrect the sale" between July 3, 2017 and September 13, 2017. (*Id.* ¶ 16.) Therefore, it is nonsensical to allege that had Boston National disclosed the Fiji Property owners' refusal to sell on July 3, 2017 (the same date Plaintiffs knew the sale had fallen through), Plaintiffs would not have attempted to purchase the property at all (a process that began much earlier than July 3). Plaintiffs apparently knew the sale had fallen through, yet they continued to negotiate and did not ask Boston National to return the escrow funds at that time. Plaintiffs are faulting Boston National for not telling them something that they already knew. This does not show fraud or misrepresentation and the Court **DISMISSES** these allegations.

The second allegation is that Boston National concealed "that Concierge

would have exclusive control over the Escrow Funds when the sale of the Fiji Property did not close, despite the terms of the void Bidders [sic] Agreement, which Boston National erroneously believes controlled the Escrowed Funds." (FAC ¶ 50.) Again, Plaintiffs allege Boston National was the "only means" for Plaintiffs to discover this concealed fact, and if Plaintiffs had known the fact, they would not have attempted to purchase the Fiji Property. (*Id.* ¶ 53.)

This convoluted allegation provides little clarity into this claim of fraud. First, Plaintiffs allege the Bidder Agreement is void because Concierge was "conducting illegal unlicensed real estate broker activities within California[,]" (*id.* ¶ 9) but also argue that Boston National erred in acting contrary to the terms of the Bidder Agreement. (*Id.* ¶ 50.) Further, it is unclear if (and why) Plaintiffs are alleging Boston National wrongly believes the Bidder Agreement controlled the disposition of the funds, or if they are alleging Boston National wrongly believes it controlled the funds.

Assuming the Bidder Agreement is valid, it appears Boston National's assertion that it needed permission from Concierge to release the funds is contradicted by the Bidder Agreement. The Agreement states: "Escrow services shall be provided exclusively by Boston National Title." (Exhibit 3 to ECF No. 77-3, at ¶ 9.)[2] Thus it is plausible that it was incorrect for Boston National to state that

---

[2] Boston National requests the Court take judicial notice of the Bidder Agreement. (ECF No. 77-3.) The Court finds it more appropriate to incorporate by reference the Bidder Agreement. A court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Incorporation by reference allows a court deciding a Rule 12(b)(6) motion to dismiss to consider materials "properly submitted as part of the complaint." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). A court deciding a Rule 12(b)(6) motion may consider a document that is not attached to the complaint if the complaint "necessarily relies" on it and "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claims; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marker v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

Plaintiffs' complaint refers to the Bidder Agreement, and the Agreement is central to the claims. Further Plaintiffs do not respond to Boston National's request for judicial notice, or dispute

it needed Concierge's permission to release the funds, when the Agreement appears to say otherwise. But it is unclear if Plaintiffs are alleging the Bidder Agreement provided a misrepresentation regarding the release of funds, or they are alleging that Boston National made a misrepresentation or concealed a certain fact. If Plaintiffs are alleging Boston National concealed a fact, they must provide "'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). What fact was concealed, and when/how was it kept from Plaintiffs? Plaintiffs also do not allege that Boston National "inten[ded] to defraud" them (as opposed to simply following Concierge's instructions), which is a required element under fraudulent concealment and intentional misrepresentation. *See Kaldenbach v. Mutual of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 850 (Ct. App. 2009); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (holding to plead intentional misrepresentation, the plaintiff must specifically indicate the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation"). The Court finds Plaintiffs have not pled this allegation with enough specificity to provide Boston National, or the Court, an opportunity to analyze the claims. These three causes of action are **DISMISSED**.

### E. Conversion

Conversion is "any act of dominion wrongfully asserted over another's personal property in denial of or inconsistent with his rights therein. It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use." *Igauye v. Howard*, 114 Cal. App. 2d 122,

---

the authenticity of the provided copy of the Agreement. Thus the Court incorporates by reference the Agreement. The Court denies Boston National's other requests for judicial notice as the Court does not rely on the other documents.

126 (1952). Plaintiffs allege Boston National "substantially interfered with Plaintiffs' ownership and possession of the Escrow Funds by intentionally taking possession of, preventing Plaintiffs from having access to, and refusing to return the Escrow Funds after Plaintiffs demanded their return, to which Plaintiffs did not consent." (FAC ¶ 76.)

Plaintiffs allege they had a right to the funds on July 3, 2017 when the sale fell through.[3] Plaintiffs allege Boston National wrongfully held onto the funds when it had no right to do so, thus interfering with Plaintiffs' right to possess their property. Plaintiffs allege this caused them damages, i.e. attorney's fees and loss of interest accrued during the period of Boston National's wrongful possession. Plaintiffs have sufficiently alleged conversion. The Court **DENIES** the motion to dismiss the conversion claim.

### F. <u>Negligence and Breach of Fiduciary Duty</u>

Plaintiffs pled negligence and breach of fiduciary duty in their original complaint and Boston National did not move to dismiss the claims until they again appeared in the first amended complaint. Thus, Plaintiffs argue waiver.

As noted above, "amending or consolidating a complaint does not give defendants a second opportunity to raise waived objections" but "a party is not precluded from making a second motion based on a defense that he or she did not have reasonable notice of at the time that party first filed a motion to dismiss." *Townsend*, 2016 WL 10570248, at *6; Wright & Miller, at § 1388.

The negligence and breach of fiduciary duty claims are based on substantially

---

[3] Again, this is contradicted by Plaintiffs' assertion that they negotiated with the Fiji Property owners for a few months, and there is therefore no plausible allegation that Plaintiffs were entitled to possession of the funds during this time because the sale was possibly still pending. To maintain a conversion cause of action, a complaining party must prove "she was entitled to immediate possession [of the converted property] at the time of conversion." *In re Bailey,* 197 F.3d 997, 1000 (9th Cir. 1999). A more plausible allegation is that Plaintiffs had a right to the funds on September 28, 2017 when negotiations ended and Plaintiffs first demanded the return of the funds, (*see* FAC ¶ 21).

the same allegations in the amended complaint and the original complaint. There is no evidence that Boston National did not have "reasonable notice" or even reasonable information to dismiss the claims originally. The return of the escrow funds, which changed the facts for the accounting claim (analyzed *supra*) does not change the negligence or fiduciary duty claims. The claims are based on actions that occurred before the return of the funds. Thus Boston National has waived its ability to move to dismiss these claims. The Court **DENIES** the motion to dismiss the negligence and breach of fiduciary duty claims.

### G. Tort of Another Doctrine

Plaintiffs allege their efforts to recover the escrow fees has forced them to incur "hundreds of thousands of dollars in attorneys' fees" in the suit against Concierge, which Plaintiffs seek from Boston National "pursuant to the tort of another doctrine." (FAC ¶ 23.)

Under the American rule, each party must generally pay his or her own attorney fees. *Gray v. Don Miller & Assocs., Inc.*, 35 Cal. 3d 498, 504 (1984). This rule is subject to several exceptions, one of which is the "tort of another," or "third party tort" exception, which allows recovery of attorney fees where the plaintiff is required to employ counsel to prosecute or defend an action against a third party because of the tort of the defendant. *Id.* at 505. The seminal California case establishing the tort of another doctrine is *Prentice v. North American Title Guaranty Corp.*, 59 Cal. 2d 618 (1963), where the California Supreme Court held:

> A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred.

*Id.* at 620.

Fifteen years later, the California Supreme Court revisited the tort of another doctrine. In *Davis v. Air Technical Industries, Inc.*, 22 Cal. 3d 1, 6 (1978), the Court

limited the scope of *Prentice*. The Court held "the *Prentice* exception was not meant to apply in every case in which one party's wrongdoing causes another to be involved in litigation with a third party." *Id.* Instead, the rule is limited to cases involving "exceptional circumstances." *Id.* (citing *Prentice*, 59 Cal. 2d at 620.) The Court had no intention of letting the exception swallow the general rule that parties were to pay their own attorney's fees. *Id.* (citing Cal. Civ. Code § 1021).

A claim under the tort of another doctrine thus involves three parties: the claimant, the tortfeasor, and the third party; and the tortfeasor must have committed a tort against the claimant. *Burger v. Kuimelis*, 325 F. Supp. 2d 1026, 1041 (N.D. Cal. 2004.) "[W]hen a defendant's tortious conduct requires the plaintiff to sue a third party, or defend a suit brought by a third party, attorney fees the plaintiff incurs in this third party action 'are recoverable as damages resulting from a tort in the same way that medical fees would be part of the damages in a personal injury action.'" *Third Eye Blind, Inc. v. Near N. Entm't Ins. Servs., LLC*, 127 Cal. App. 4th 1311, 1325 (2005).

Plaintiffs allege that due to the tort of Boston National (failing to return the escrow fees), they were forced to bring a case against Concierge. (FAC ¶ 23.) They seek to recover from Boston National the costs of litigation the Concierge suit. But the Court finds Plaintiffs have pled themselves out of using the tort of another doctrine. The tort of another doctrine does not apply "to one of several joint tortfeasors." *Vacco Indus. Inc. v. Van den Berg*, 5 Cal. App. 4th 34 (1992). The doctrine "does not reach so far as to allow plaintiffs to pick and choose which one of several joint tortfeasors should absorb the costs of the plaintiffs litigating with the other tortfeasors." *Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 44, 81 (2009); *see MJT Secs., LLC v. Toronto Dominion Bank*, No. 04-16362, 2006 WL 123661, at *2 (9th Cir. 2006) (holding the doctrine can be used if two parties commit "separate and distinct tort[s]" but not if they are joint tortfeasors).

"Joint tortfeasors" is defined as "[t]wo or more tortfeasors who contributed to

the claimant's injury and who may be joined as defendants in the same lawsuit." *Joint tortfeasors*, BLACK'S LAW DICTIONARY (11th ed. 2019). "[T]he term has also been used to describe one whose negligence, in concurrence with the negligence of another, has caused a single injury." *Mayhugh v. County of Orange*, 141 Cal. App. 3d 763, 768 (1983) (McDaniel, J., dissenting) (citing cases).

Plaintiffs did not join Concierge and Boston National in one lawsuit, but Plaintiffs have alleged the same conduct by Concierge and Boston National (not returning the funds) contributed to a single injury (the loss of the use of the funds). Plaintiffs clearly already sued Concierge for the same conduct they now allege against Boston National. (*See* 17-cv-2263-BAS-MDD, ECF No. 12 (Plaintiffs allege Concierge committed, *inter alia*, conversion and breached its fiduciary duty to Plaintiffs by refusing to return the escrow funds).) The Court finds Plaintiffs have alleged the two Defendants are joint tortfeasors. *See TSI Seismic Tenant Space, Inc. v. Superior Court*, 149 Cal. App. 4th 159, 167 n.3 (2007) (finding the plaintiff had sufficiently alleged the defendants to be joint tortfeasors when it was alleged that the two "owed a tort duty of care to it and that their combined negligence contributed to its damages"). Plaintiffs have alleged that both Defendants' tortious action in not returning the escrow funds caused Plaintiffs damages. But Plaintiffs made the choice to sue Concierge "based on Boston National's refusal to return" the funds, and Plaintiffs offer no reason why they could not have only sued Boston National. (*See* FAC ¶ 23; Opp'n at 18.) Therefore, Plaintiffs' attorney's fees against Concierge "were caused by its decision to pursue a joint tortfeasor, rather than simply seek a recovery based on [Boston National's] negligence." *Elec. Elec. Control, Inc. v. L.A. Unif. Sch. Dist.*, 126 Cal. App. 4th 601, 617 (2005).

The Court finds Plaintiffs have not plausibly pled the doctrine applies, given the relationship and allegations against the two Defendants, thus, Plaintiffs have not sufficiently pled this case presents an "exceptional circumstance" justifying the need

for this doctrine.[4] The Court **DISMISSES** the "tort of another doctrine" claim.

### H. Punitive Damages

Boston National moves to dismiss Plaintiffs' claim for punitive damages because Plaintiffs have not alleged a sufficient state of mind.[5] When a plaintiff alleges a claim for punitive damages, a court may dismiss the claim if the plaintiff fails to allege sufficient facts to show "oppression, fraud, or malice." Cal. Civ. Code § 3294(a). It is insufficient when the plaintiff asserts "nothing more than conclusory allegations" of oppression, fraud, or malice. *Kelley v. Corrections Corp. of Am.*, 750 F. Supp. 2d 1132, 1147 (E.D. Cal. 2010).

In this Order the Court has found Plaintiffs have not sufficiently alleged fraudulent conduct. And beyond their allegations of fraud, Plaintiffs only offer legal conclusions of punitive conduct using the buzzwords "oppressive" and "malicious." (*See* FAC ¶ 33 ("Boston National's actions were oppressive, fraudulent, and

---

[4] The Court notes that it is unsettled as to whether the tort of another doctrine has been replaced by statute. After *Davis*, the legislature implemented California Civil Code section 1021.6. Some courts have held this doctrine codified the "tort of another" doctrine. *Priority Pharmacy, Inc. v. Serono, Inc.*, No. 09-cv-1867-BTM (POR), 2010 WL 55660, at *5 (S.D. Cal. Jan. 5, 2010); *John Hancock Mutual Life Ins Co. v. Setser*, 42 Cal. App. 4th 1524, 1531–35 (1996) (holding that section 1021.6 governs claims under the tort of another doctrine). The Ninth Circuit has appeared to agree, but only in dictim. *See Unocal Corp. v. United States*, 222 F.3d 528, 543 (9th Cir. 2000.) One court held the statute codifies the doctrine "only for claims of implied indemnity." *Burger v. Kuimelis*, 325 F. Supp. 2d 1026, 1043 (N.D. Cal. 2004) (holding that because section 1021.6 only applies to implied indemnity courts, "it could not have codified each possible application of the tort of another doctrine"). But the *Burger* court also noted that the majority of cases "simply ignore the enactment of section 1021.6 in discussing the tort of another doctrine." *Id.* at 1041. The parties in this case, either intentionally or not, went with the majority and did not mention the statute in their papers. Further, Plaintiffs do not plead indemnity, so the Court does not discuss the issue here. If Plaintiffs again assert the tort of another doctrine in its amended complaint, and if Boston National moves to dismiss the claim, it is to discuss whether the tort of another doctrine is still applicable.

[5] Moving to dismiss a prayer for relief is not proper under Rule 12(b)(6) but should be requested pursuant to Rule 12(f). But Boston National is challenging the sufficiency of the allegations supporting punitive damages, therefore, the present motion, rather than a Rule 12(f) motion to strike, is proper. *Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*, No. 07-cv-912-IEG (BLM), 2007 WL 2206946, at *7 (S.D. Cal. July 27, 2007). The Court will analyze the request.

malicious, and Boston National committed them willfully or with reckless disregard for Plaintiffs' rights.") These allegations are insufficient to allege punitive damages. Further, to state a request for punitive damages against a corporation, a plaintiff must make allegations concerning an officer, director, or managing agent of that corporation. Cal. Civ. Code § 3294(b). A company cannot "commit willful and malicious conduct—only an individual can." *Tawain Semiconductor Mfg. Co. v Tela Innovations, Inc.*, No. 14-cv-362-BLF, 2014 WL 3705350, at *6 (N.D. Cal. July 24, 2014). The failure "to include the names of *any* individual actor is a fatal defect in [a] pleading of 'willful and malicious conduct.'" *Id.* (citing *Xerox Corp. v. Far W. Graphics, Inc.*, No. C-03-4059-JFPVT, 2004 WL 2271587, at *2 (N.D. Cal. Oct. 6, 2004) ("FWG requests punitive damages, but fails to allege any conduct by an officer, director or managing agent of Xerox sufficient to support the imposition of punitive damages against Xerox.").

Because Plaintiffs only provide legal conclusions without any factual support, and further fail to even reference any officer, director, or managing agent of Boston National, the claim for punitive damages fails. The Court **DISMISSES** the punitive damages allegations.

**IV. CONCLUSION**

The Court grants in part and denies in part the Motion to Dismiss as follows. The Court **DISMISSES** the following claims: (1) Unfair Competition Law claims predicated on Boston National's misrepresentation; (2) False Advertising Law claims; (3) fraudulent concealment claims; (4) fraudulent misrepresentation claims; (5) negligent misrepresentation claims; (6) tort of another doctrine claims; (7) punitive damage allegations.

The Court grants Plaintiffs leave to file an amended complaint to the extent they can cure the deficiencies herein. The Court notes that the parties have already engaged in discovery and Plaintiffs should be able to sufficiently allege any and all claims at this point. Thus it is unlikely the Court will grant Plaintiffs any further

opportunities to amend. Plaintiffs may file an amended complaint <u>on or before September 16, 2019.</u> Should Plaintiffs choose not to amend the complaint, the case will proceed on the following causes of action: (1) Accounting; (2) Unfair Competition Law claims not predicated on Boston National's misrepresentation; (3) conversion; (4) negligence; (5) breach of fiduciary duty. If no amended complaint is filed, Boston National is to file an answer <u>on or before September 30, 2019.</u>

**IT IS SO ORDERED.**

**DATED: August 15, 2019**

Hon. Cynthia Bashant
United States District Judge