1
2
3
4
5
6
7

8
9

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17

HOWARD APPEL, *et al.*,

Plaintiffs,

v.

BOSTON NATIONAL TITLE
AGENCY, LLC,

Defendant.

Case No. 18-cv-873-BAS-MDD

**ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**

**[ECF No. 101]**

18
19
20
21
22
23
24

Presently before the Court is Defendant Boston National Title Agency, LLC's Motion to Dismiss Third Amended Complaint.  ("Mot.," ECF No. 101.)  Plaintiffs Howard Appel, David Cohen, and Ke'e Partners LLC filed an opposition to the Motion, ("Opp'n," ECF No. 102), to which Defendant replied, ("Reply," ECF No. 103).  The Court finds resolution of this matter is suitable without the need for oral argument. *See* Civ. L.R. 7.1(d)(1).  For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Boston National's Motion.

25

## I.    BACKGROUND

26
27
28

In June 2017, Plaintiffs signed a Bidder Registration Agreement with Concierge Auctions, LLC, to participate in Concierge's "Summer Portfolio Sale" auction of real estate properties.  The Bidder Agreement provided that escrow

services would be provided by Boston National Title.  (Third Amended Complaint, "TAC," ECF No. 73, ¶ 9.)  Plaintiffs wired $100,000 to Boston National to be held in Boston National's escrow account.  Plaintiffs entered the auction and bid on a property in Fiji ("Fiji Property").  (*Id.*)  On July 1, 2017, Plaintiffs were declared the winning bidder for the Fiji Property.  (*Id.* ¶ 12.)  Concierge emailed Plaintiffs informing them they had won and requested they wire an additional $185,000 to the escrow account.  Concierge also emailed the Fiji Property owners congratulating them on the sale and sent a purchase contract.  (*Id.* ¶ 13.)  The Fiji Property owners responded to Concierge, stating they were surprised by the email because they had informed Concierge a few days prior that the auction would not go forward.  (*Id.* ¶ 14.)  Boston National was copied on the above emails.  Plaintiffs state they were unaware the Fiji Property owners were refusing to sell the property and therefore wired the additional $185,000 to Boston National's escrow account on July 3, 2017.  (*Id.* ¶ 15.)

On July 7, 2017, Plaintiffs discovered the Fiji Property owners were refusing to sell and a few weeks later negotiated with the owners to attempt to salvage the deal.  (*Id.* ¶ 16.)[1]  The negotiations were unsuccessful, and Plaintiffs requested Boston National provide them with "the escrow instructions."  (*Id.* ¶ 18.)  Boston National responded, appearing to have no knowledge of any escrow instructions, and stated that no escrow agreement was signed between Plaintiffs and Boston National.  (*Id.* ¶ 19.)  Boston National told Plaintiffs it had "a fiduciary relationship with Concierge" and then asked a Concierge representative to inform Plaintiffs "of what is to take place if the seller refuses to sign the contract."  (*Id.* ¶ 20.)  Boston National stated if an agreement could not be reached, it would "interplead the funds to the appropriate court for disposition."  (*Id.*)  Plaintiffs infer that Concierge instructed Boston National not to disburse the funds until Concierge said so.  (*Id.* ¶ 21.)

---

[1] In the midst of this, Plaintiffs state they asked Boston National whether it would return the escrow funds.  (TAC ¶ 17.)

On September 28, 2017, Plaintiffs demanded Boston National return their funds, and demanded Concierge tell Boston National to do the same. (*Id.* ¶ 22.) Boston National did not do so, appearing to "have given Concierge complete control" over the funds. (*Id.* ¶ 23.) Plaintiffs then filed suit against Concierge for the return of the escrow funds and "hundreds of thousands in attorneys' fees" incurred. (*Id.* ¶ 24; *see* 17-cv-2263-BAS-MDD ("the *Concierge* case").) Concierge commenced an arbitration proceeding in New York and told Plaintiffs if they paid $37,500, Concierge would dismiss the proceeding and would instruct Boston National to release the funds. (TAC ¶ 25.) Plaintiffs did not pay, and the *Concierge* case proceeded. This Court stayed the *Concierge* case and directed the parties to arbitration. (17-cv-2263, ECF No. 30.)

In April 2018, Plaintiffs again asked Boston National to return the funds. (*Id.* ¶ 26.) Plaintiffs allege, on information and belief, that Boston National refused to do so because it was using the funds "for the benefit of itself, Concierge, or another third party." (*Id.* ¶ 28.) Plaintiffs then filed the present suit against Boston National on May 4, 2018. Boston National returned the $285,000 to Plaintiffs on May 24, 2018. (*Id.* ¶ 47.)

As to the procedural history of this case, Plaintiffs' original complaint against Boston National was for breach of fiduciary duty, negligence, and an accounting. Boston National answered the complaint. (ECF No. 7.) The parties had various discovery disputes, the most notable being Plaintiffs' request for all documents related to the escrow account into which Plaintiffs deposited the $285,000. This escrow account, held by Wells Fargo Bank, is a repository of funds from customers of Concierge and Boston National. Boston National produced redacted statements for the account so as not to disclose the identification of the customers who also had funds in the account. Plaintiffs sought unredacted statements, and Judge Dembin and this Court denied the request. (ECF No. 82.)

In the midst of the discovery disputes, Plaintiffs sought leave to file an

amended complaint, which the Court granted.  The amended complaint contained nine claims.  Boston National moved to dismiss the amended complaint in its entirety, which the Court granted in part.  ("Prior Order," ECF No. 83.)  Due to an erroneous filing of a second amended complaint, (*see* ECF Nos. 95–98), the present complaint is the Third Amended Complaint.  Boston National again moves to dismiss the Complaint.

## II.    LEGAL STANDARD

A complaint must plead sufficient factual allegations to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint.  Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001).  The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).  To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'"  *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

## III.   ANALYSIS

### A.    **Procedural Issues**

Before the Court turns to the merits of the Motion, it must address the

documents, evidence, and objections that were filed as attachments to the parties' briefs.   As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) (citation omitted).   There are two exceptions to this.   *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).   First, the court may consider "material which is properly submitted as part of the complaint" which means the documents are either "physically attached to the complaint" or if the "complaint necessarily relies" on them and their authenticity is not contested.   *Id.*   Second, a court may judicially notice "matters of public record." Fed. R. Evid. 201; *Mack v S. Bay Beer Distib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).[2]

Boston National attached five exhibits to its Motion.   The first attachment includes excerpts of the deposition of Mr. Appel.   (ECF No. 101-2.)   The Complaint neither refers to nor relies on the deposition, thus, it may not be incorporated by reference.   And Boston National does not ask the Court to judicially notice the deposition, nor could it.   Therefore, the Court does not consider the deposition.

Boston National also requests the Court take judicial notice of four documents. (ECF No. 101-3.)   The first three documents are filings in this case and the related case 17-cv-2263.   The Court may of course take judicial notice of filings and pleadings on its own docket, because such documents are "not subject to reasonable dispute because [their authenticity] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). But such requests are unnecessary; Boston National may cite directly to the docket to reference such court filings.   *See, e.g., Colodney v. Orr*, No. EDCV 14–01973– VAP, 2015 WL 1636818, at *1 (C.D. Cal. Apr. 9, 2015), *aff'd*, 651 F. App'x. 630 (9th Cir. 2016) ("As an order in the Court's own docket, judicial notice is not required

---

[2] The Court previously incorporated by reference the Bidder Agreement.   (Prior Order at 12 n.3.) The Court does so again because the Third Amended Complaint relies on the Bidder Agreement.

in order for the Court to consider Exhibit B.").  Accordingly, the Court grants Boston National's request, but notes that, for future filings, citing directly to the docket is preferable.

Boston National also asks the Court to judicially notice the California Secretary of State's business entity registration information for BNT Title Company of California and the California Department of Insurance's business entity registration information for BNT Title Company of California.  District courts may take judicial notice of "records and reports of administrative bodies," *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012), as well as "undisputed matters of public record." *Harris v. County of Orange*, 682 F.3d 1126, 1131–32 (9th Cir. 2012). However, the Defendant in this matter is Boston National Title Agency, LLC.  The entity listed on the two documents is BNT Title Company of California.  Defendant argues that it, Boston National Title Agency, LLC "is licensed to provide escrow and title services in the State of California, as BNT Title Company of California."  (Mot. at 10.)  But, this assertion, and the relationship between Boston National and BNT Title Company, is not apparent from the judicially noticeable documents.  At this stage, the Court cannot consider the assertion by Boston National.  Therefore, there is no point in judicially noticing the registration information for this entity.  The Court denies the requests.

Finally, as an attachment to its opposition, Plaintiffs include excerpts from a deposition.  (ECF No. 102-1.)  Plaintiffs do not request the Court judicially notice this document, and it would not be proper to do so.[3]  The Court does not consider the excerpts.

---

[3] Boston National objects to the Court's consideration of the deposition transcript because it is "extraneous evidence" that the Court may not consider in ruling on the Motion to Dismiss.  (ECF No. 104.)  This is strange because Boston National also asked the Court to consider a deposition transcript in ruling on its Motion.  (ECF No. 101-2.)  The Court will not consider either deposition and requests that counsel be more careful in the future regarding the filing of exhibits and objections.

The Court now addresses each cause of action in turn.

**B.     Accounting**

The $285,000 has been returned, but Plaintiffs request an accounting of those funds, as "it is unclear" whether the funds were the original escrow funds, or whether Boston National used those funds and "paid Plaintiffs with someone else's money." (TAC ¶ 41.)  Plaintiffs also request an accounting of any interest Boston National earned from the funds during the time it held them and "any use of profits" realized through the funds.  (*Id.* ¶¶ 40.)

The Court previously partially denied Boston National's motion to dismiss this claim; Boston National's current Motion does not convince the Court to deviate from this ruling.  For the same reasons detailed in the Court's prior order, (Prior Order at 6) the Court **DENIES** the Motion to Dismiss this cause of action.

**C.     Violation of California Unfair Competition Law**

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  "Each prong of the UCL is a separate and distinct theory of liability."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).  Plaintiffs alleges Boston National violated the UCL through fraudulent and misleading advertising.

First, to the extent the alleged misrepresentations or fraud stem from information in the Bidder Agreement, Boston National argues it is not responsible for anything in the Bidder Agreement as it was not a party to that agreement, nor is it responsible for anything Concierge told Plaintiffs.  The Court previously found that Plaintiffs have not pled Boston National had any responsibility for the information disclosed in the Bidder Agreement.  (Prior Order at 7.)  This holding remains the same and the claims concerning Boston National's "misrepresentations that all escrow services related to the Fiji Property, 'shall be exclusively provided by Boston National Title ("Escrow Agent",)' contained within the Bidders Agreement" (TAC ¶ 44) and all other claims of misrepresentations made by Concierge or in the

Bidder Agreement are **DISMISSED**.

Plaintiffs allege Boston National's conduct is fraudulent because the company falsely advertised it was licensed to do business in California and licensed as an escrow agency. (TAC ¶ 44.) Boston National argues that "to the extent Plaintiffs' claims for 'False Advertising' or 'Unfair Business Practices' rely on BNT's website referencing a 'San Diego Office' or statements regarding licensing to provide services in 42 states, there is no allegation in the TAC as to how BNT being licensed in California was relevant to their participation in an auction for a property in the Republic of Fiji." (Mot. at 11 (citing TAC ¶ 8).) The Court also previously analyzed this issue of Plaintiffs' reliance on this allegedly false advertising. "[P]laintiff must show that he personally lost money or property because of his own actual and reasonable reliance on the allegedly untrue or misleading statements." *Rosado v. eBay, Inc.*, 53 F. Supp. 3d 1256, 1264–65 (N.D. Cal. 2014). The Court dismissed the claim because Plaintiffs had not sufficiently pled they relied on Boston National's representation that it could conduct services in California. (Prior Order at 8.) The Court held:

> Plaintiffs do not assert how or why they believed Boston National was licensed in California before entering into the agreement with Concierge, or even that they had any information at all about Boston National before sending the escrow funds. Plaintiffs do not assert they looked up Boston National's webpage before entering into the agreement nor do they argue they only agreed to participate in the auction because Boston National was licensed locally. Instead, Plaintiffs were in possession of the Bidder Agreement which lists Boston National's address in North Carolina, and they do not allege they asked anyone about this representation or expressed concerns about Boston National's location. Therefore Plaintiffs have not plausibly pled they relied on any specific misrepresentation or omission before entering into the agreement.

(*Id* at 8–9.)

Plaintiffs now state they have "remedied the UCL claim issues." (Opp'n at 11.) They specifically allege, "[b]eginning on or before June 5, 2017, as part of

[their] due diligence concerning their attempted purchase of real property located in the Republic of Fiji, Plaintiff Appel reviewed Boston National's website, at which time Plaintiff Appel observed Boston National's misrepresentations that 'Boston National is directly licensed to provide our services and issue title policies in 42 states plus the District of Columbia,' and California is highlighted as one of the 42 States." (TAC ¶ 8.)  Plaintiffs claim they "relied upon Boston National's false advertising that it could conduct business and perform escrow services in the State of California and that it was an expert in its field by wiring its Escrow Funds to Boston National." (TAC ¶ 75.)  The Court finds that Plaintiffs have plausibly pled they relied on Boston National's representations, which induced them to enter into the agreement and then deposit escrow funds.  The Court **DENIES** the Motion to Dismiss these claims.

### D.    <u>Violation of False Advertising Law</u>

Plaintiffs allege Boston National violated California's False Advertising Law ("FAL") because it "advertised and adopted . . . the position that it was the exclusive escrow agent for Concierge, that it could conduct business and perform escrow services in the State of California, and that it was an expert in its field."  (TAC ¶ 73.) Plaintiffs provide no information as to how Boston National may have "adopted" Concierge's statements.   The fact that Concierge may have advertised Boston National in a certain way, without Boston National's contribution, is not a claim against Boston National.  "In the context of false advertising, there is no duty to investigate the truth of statements made by others."  *Parent v. Millercoors LLC*, No 15-cv-1204-GPC-WVG, 2016 WL 3348818 at *7 (S.D. Cal. June 16, 2018).  The Court **DISMISSES** these claims.

The Court again turns to the allegations that Boston National made false representations regarding its ability to lawfully conduct business in California. Boston National again contests Plaintiffs' reliance on this allegedly false advertising. Standing under California's False Advertising law is limited to "any person who has suffered injury in fact and has lost money or property as a result of" a defendant's

alleged misrepresentations.  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 321 (2011) (quoting California Business & Professions Code § 17535).  Most courts have interpreted the FAL's "as a result of" language to require that plaintiffs "allege their own reliance on the alleged misrepresentations." *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 866–67 (N.D. Cal. 2015) (citing cases).  As Plaintiffs' false advertising claims stem from the same allegations as their unfair competition claims, the same analysis as above applies here.  Plaintiffs have plausibly pled they relied on Boston National's untrue statements and were thus induced into depositing funds. The Court **DENIES** the Motion to Dismiss these claims.

### E.     Fraudulent Concealment

Fraudulent concealment consists of five elements: "(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 850 (2009).

Plaintiffs' fraudulent concealment claim is based on two allegations: first, that Boston National concealed "the fact that Concierge would have exclusive control over the Escrow Funds when the sale of the Fiji Property did not close, despite the terms of the void Bidder Agreement, which Boston National erroneously believes controlled the Escrow Funds" (TAC ¶54) and second, that Boston National concealed that fact that the Fiji Property owners refused to sell the property on July 3, 2017 (*id.* ¶ 55).

As to the first contention, as the Court previously found, the general premise of this claim is unclear.  Plaintiffs contend the Bidder Agreement is void because

Concierge conducted "illegal, unlicensed real estate broker activities within California" and "fraudulently induced Plaintiffs" into signing the agreement. (TAC ¶ 9.)  This contention does not appear to be relevant to the assertion that Boston National concealed that Concierge would exclusively control the funds.  It is also unclear why Plaintiffs contend Boston National "erroneously" believes the Agreement controlled the escrow funds; if the Agreement in fact does not control the funds, then why is it fraudulent for Boston National to allegedly conceal that Concierge had control over the funds?  Further, Boston National is not a party to the Bidder Agreement.  The Court also noted in its prior order that Plaintiffs have not pled Boston National's intention to defraud as it relates to this allegedly concealed fact.  (Prior Order at 13.)  Plaintiffs have not cured this deficiency; thus, the Court **DISMISSES** this portion of the fraudulent concealment claim.

As to the second contention, Plaintiffs state they would not have deposited the escrow funds or proceeded with the purchase of the property had Boston National not concealed the Fiji Property owners' refusal to sell on July 3, 2017.  (TAC ¶ 57.)  Boston National responds that Plaintiffs could have learned this information from Concierge.  (Mot. at 14.)  Even so, this does not negate a claim of concealment.  Boston National also argues that Plaintiffs knew on at least July 7 that the deal had fallen through and "since Plaintiffs clearly knew of the Fiji Property owners' dispute, this information cannot be a basis for a fraudulent concealment or misrepresentation claim." (*Id.* at 15.)  This is not so; Plaintiffs claim if they had known of the refusal to sell on July 3, they would not have wired extra money, thus, the fact that they learned of it four days later harmed them.  Accordingly, Plaintiffs have sufficiently pled that Boston National concealed a fact from them with the intention of inducing Plaintiffs to wire more money, and Plaintiffs relied on this to their detriment.  The Court **DENIES** the Motion to Dismiss this portion of the fraudulent concealment claim.

### F.   Fraudulent Misrepresentation and Negligent Misrepresentation

The elements of a claim for intentional misrepresentation are: "(1) a misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) actual and justifiable reliance, and (5) resulting damages." *Cisco Sys., Inc. v. STMicroelectronics, Inc*., 77 F. Supp. 3d 887, 897 (N.D. Cal. 2014). The elements for negligent misrepresentation are the same, except there is no requirement of knowledge of falsity, instead, there must be no reasonable ground for believing the misrepresentation to be true. *Wells Fargo Bank, N.A. v. FSI Fin. Sols., Inc.*, 196 Cal. App. 4th 1559, 1573 (2011).

The first basis of Plaintiffs' misrepresentation claims is Boston National's alleged misrepresentation that it could perform services in California.  The Court has found above that this allegation is sufficiently pled to form the basis of Plaintiffs' UCL and false advertising claims.  The Court finds that Plaintiffs have plausibly pled that Boston National intentionally and/or negligently misrepresented this and the Court **DENIES** the Motion to Dismiss these claims under both the intentional and negligent misrepresentation causes of action.

Plaintiffs also contend that Boston National negligently misrepresented "that in order to return the Escrow Funds, it required Concierge's consent, which it had no reasonable ground to believe."  (TAC ¶ 68.)  Plaintiffs merely state in a conclusory fashion that they "reasonably" relied on the misrepresentation.  (*Id.* ¶ 70.)  This is not enough, considering Plaintiffs also allege they continued to ask Boston National for the return of their funds despite Boston National's assertion.  (*See* TAC ¶¶ 20–22; Opp'n at 3 n.1.)  This shows they did not rely on the assertion, nor were they damaged by it.  The Court **DISMISSES** this part of the negligent misrepresentation cause of action.

### G.   Conversion

The Court previously denied the motion to dismiss Plaintiffs' conversion claim.  Boston National's argument in its current Motion for the dismissal of the

conversion claim is based on a typographical error of a date listed by Plaintiffs, which they address in their opposition.  (Mot. at 18–19, Opp'n at 21 n.10.)  For the same reasons the Court stated in its prior order, the Court **DENIES** the Motion to Dismiss the conversion claim.

### H.    Tort of Another Doctrine

Plaintiffs allege that their efforts to recover the escrow fees has forced them to incur "hundreds of thousands of dollars in attorneys' fees" in the suit against Concierge, which Plaintiffs seek from Boston National "pursuant to the tort of another doctrine."  (TAC ¶ 24.)

Under the American rule, each party must generally pay his or her own attorney fees.  *Gray v. Don Miller & Assocs., Inc.*, 35 Cal. 3d 498, 504 (1984).  This rule is subject to several exceptions, one of which is the "tort of another," or "third party tort" exception, which allows recovery of attorney fees where the plaintiff is required to employ counsel to prosecute or defend an action against a third party because of the tort of the defendant.  *Id.* at 505.  The seminal California case establishing the tort of another doctrine is *Prentice v. North American Title Guaranty Corp.*, 59 Cal. 2d 618 (1963), where the California Supreme Court held:

> A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred.

*Id.* at 620.

Fifteen years later, the California Supreme Court revisited the tort of another doctrine.  In *Davis v. Air Technical Industries, Inc.*, 22 Cal. 3d 1, 6 (1978), the Court limited the scope of *Prentice*.  The Court held "the *Prentice* exception was not meant to apply in every case in which one party's wrongdoing causes another to be involved in litigation with a third party."  *Id.*  Instead, the rule is limited to cases involving "exceptional circumstances."  *Id.* (citing *Prentice*, 59 Cal. 2d at 620.)  The Court had

no intention of letting the exception swallow the general rule that parties were to pay their own attorney's fees. *Id.* (citing Cal. Civ. Code § 1021).

A claim under the tort of another doctrine thus involves three parties: the claimant, the tortfeasor, and the third party; and the tortfeasor must have committed a tort against the claimant. *Burger v. Kuimelis*, 325 F. Supp. 2d 1026, 1041 (N.D. Cal. 2004.) "[W]hen a defendant's tortious conduct requires the plaintiff to sue a third party, or defend a suit brought by a third party, attorney fees the plaintiff incurs in this third party action 'are recoverable as damages resulting from a tort in the same way that medical fees would be part of the damages in a personal injury action.'" *Third Eye Blind, Inc. v. Near N. Entm't Ins. Servs., LLC*, 127 Cal. App. 4th 1311, 1325 (2005).

The tort of another doctrine does not apply "to one of several joint tortfeasors." *Vacco Indus. Inc. v. Van den Berg*, 5 Cal. App. 4th 34 (1992). The doctrine "does not reach so far as to allow plaintiffs to pick and choose which one of several joint tortfeasors should absorb the costs of the plaintiffs litigating with the other tortfeasors." *Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 44, 81 (2009); *see MJT Secs., LLC v. Toronto Dominion Bank*, No. 04-16362, 2006 WL 123661, at *2 (9th Cir. 2006) (holding the doctrine can be used if two parties commit "separate and distinct tort[s]" but not if they are joint tortfeasors). "Joint tortfeasors" is defined as "[t]wo or more tortfeasors who contributed to the claimant's injury and who may be joined as defendants in the same lawsuit." *Joint tortfeasors*, BLACK'S LAW DICTIONARY (11th ed. 2019). "[T]he term has also been used to describe one whose negligence, in concurrence with the negligence of another, has caused a single injury." *Mayhugh v. County of Orange*, 141 Cal. App. 3d 763, 768 (1983) (McDaniel, J., dissenting) (citing cases).

The Court previously found Plaintiffs had not plausibly pled the tort of another doctrine, for the following reason:

Plaintiffs did not join Concierge and Boston National in one lawsuit,

but Plaintiffs have alleged the same conduct by Concierge and Boston National (not returning the funds) contributed to a single injury (the loss of the use of the funds).  Plaintiffs clearly already sued Concierge for the same conduct they now allege against Boston National.  (*See* 17-cv-2263-BAS-MDD, ECF No. 12 (Plaintiffs allege Concierge committed, *inter alia*, conversion and breached its fiduciary duty to Plaintiffs by refusing to return the escrow funds).)  The Court finds Plaintiffs have alleged the two Defendants are joint tortfeasors.  *See TSI Seismic Tenant Space, Inc. v. Superior Court*, 149 Cal. App. 4th 159, 167 n.3 (2007) (finding the plaintiff had sufficiently alleged the defendants to be joint tortfeasors when it was alleged that the two "owed a tort duty of care to it and that their combined negligence contributed to its damages").  Plaintiffs have alleged that both Defendants' tortious action in not returning the escrow funds caused Plaintiffs damages.  But Plaintiffs made the choice to sue Concierge "based on Boston National's refusal to return" the funds, and Plaintiffs offer no reason why they could not have only sued Boston National.  (*See* FAC ¶ 23; Opp'n at 18.)  Therefore, Plaintiffs' attorney's fees against Concierge "were caused by its decision to pursue a joint tortfeasor, rather than simply seek a recovery based on [Boston National's] negligence."  *Elec. Elec. Control, Inc. v. L.A. Unif. Sch. Dist.*, 126 Cal. App. 4th 601, 617 (2005).

(Prior Order at 17.)

In response, Plaintiffs claim that Concierge's misconduct is fraudulently inducing Plaintiffs to deposit funds into an escrow account and deprive Plaintiffs of those funds, and this is different than Boston National's misconduct of concealing from Plaintiffs the Fiji Property owners' refusal to sell and the refusal to return the funds.  (TAC n.1.)  This is partially true; while Plaintiffs certainly sued Concierge for fraudulent inducement, they also sued Concierge for failure to return the funds.  (*See* 17-cv-2263-BAS-MDD, ECF No. 12.)  And, regardless, it is the combined actions of Concierge and Boston National that caused the harm of Plaintiffs not having access to the funds for a period of time.  While Plaintiffs claim that this case arose from their deposit of the funds with Boston National, (Opp'n at 23) in reality, this matter as a whole arose from Plaintiffs participating in Concierge's auction, which led to them depositing funds with Boston National and having issues with both

companies.  Thus, the two are joint tortfeasors; the joint conduct of both companies caused the injury.  (*See* TAC ¶ 21 ("Concierge (through counsel) instructed Boston National not to disburse the Escrow Funds until Concierge provided further instructions.").)  It was not only Boston National's conduct that led Plaintiffs to sue Concierge.  Plaintiffs have not pled that the tort of another theory applies to justify their recovery of damages under these circumstances, thus, the Court **GRANTS** the Motion to Dismiss the tort of another claims.

## I.    <u>Punitive Damages</u>

Boston National moves to dismiss Plaintiffs' claim for punitive damages because Plaintiffs have not alleged a sufficient state of mind.  The Court previously dismissed Plaintiffs' punitive damages claim because Plaintiffs had not sufficiently alleged punitive conduct nor had they alleged punitive actions of any individual. (Prior Order at 18–19.)

When a plaintiff alleges a claim for punitive damages, a court may dismiss the claim if the plaintiff fails to allege sufficient facts to show "oppression, fraud, or malice."  Cal. Civ. Code § 3294(a).  It is insufficient when the plaintiff asserts "nothing more than conclusory allegations" of oppression, fraud, or malice.  *Kelley v. Corrections Corp. of Am.*, 750 F. Supp. 2d 1132, 1147 (E.D. Cal. 2010).

Plaintiffs now state that Boston National's Chief Compliance Officer, Keith Lewis, "acted maliciously" by refusing Plaintiffs' repeated demands for the return of their funds" despite Boston National's knowledge of the Fiji Property owners' refusal to sell.  (TAC ¶ 1.)  Because Plaintiffs' have sufficiently alleged fraudulent conduct and misrepresentation, as analyzed herein, the Court finds that whether Boston National's actions (through Mr. Lewis) do in fact rise to a level that justifies punitive damages is an issue that must remain unresolved at this stage of the litigation.  If Plaintiffs are unable to support their allegations with probative evidence, their punitive damages claim may later fail either on a motion for summary judgment or at trial.  Thus, the Court **DENIES** the Motion to Dismiss the punitive damages

claim.[4]

## IV.   CONCLUSION

The Court denies in part and grants in part Boston National's Motion as detailed above.  The dismissals are with prejudice, as the Court has given Plaintiffs opportunities to correct any deficiencies in their Complaint such that any further leave to amend would be futile.  Boston National is to file an answer to the remaining causes of action or portions of causes of action on or before June 24, 2020.

**IT IS SO ORDERED.**

**DATED: June 10, 2020**

Hon. Cynthia Bashant
United States District Judge

---

[4] Further, because the above causes of action and the punitive damages claim survive the Motion to Dismiss, the Court disagrees with Boston National that Plaintiffs have not sufficiently pled it has suffered any damages.  (*See* Mot. at 18.)