UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD APPEL, an individual; DAVID COHEN, an individual; and KE'E PARTNERS, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>BOSTON NATIONAL TITLE AGENCY, LLC, a Florida limited liability company.,<br><br>Defendant. | Case No.: 18-CV-873 TWR (AHG)<br><br>**ORDER (1) DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF STANDING, AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF No. 126) |

Presently before the Court is Defendant Boston National Title Agency, LLC's Motion for Summary Judgment or, in the Alternative, Motion to Dismiss for Lack of Standing ("Mot.," ECF No. 126), as well as Plaintiffs Howard Appel; David Cohen; and Ke'e Partners, LLC's Response in Opposition to ("Opp'n," ECF No. 138) and Defendant's Reply in Support of ("Reply," ECF No. 143) the Motion. The Court held a hearing on July 20, 2021. (*See* ECF No. 147.) Having carefully considered Plaintiffs' Third Amended Complaint ("TAC," ECF No. 73), the Parties' arguments and evidence, and the law, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment ("MSJ") and **DENIES** Defendant's Motion to Dismiss for Lack of Standing ("MTD").

1

# BACKGROUND

## I. Plaintiffs Take Steps to Purchase Property in Fiji

On June 20, 2017, Plaintiffs signed a Bidder Registration Agreement (the "Bidder Agreement") with Concierge Auctions, LLC ("Concierge") to participate in Concierge's "Summer Portfolio Sale" auction of real estate properties.[1] (TAC at 7.) The Bidder Agreement stated Defendant would provide escrow services for the sale of any property. (*Id.*) Prior to the auction, Plaintiffs allege that they viewed Defendant's website for licensing information, and the website represented that Defendant is licensed to provide services and issue title policies in 42 states plus the District of Columbia, including California.[2] (Opp'n at 4.)

On June 21, 2017, Plaintiff Ke'e Partners, LLC ("Ke'e") deposited $100,000.00, on behalf of Plaintiffs, in escrow with Defendant. (Fact 1.) On June 29, 2017, Plaintiffs entered the auction and bid on a property in Fiji (the "Fiji Property"). (TAC at 7.) On July 1, 2017, Concierge emailed Plaintiffs informing them that they were the winning bidder of the Fiji Property and requested that they wire an additional $185,000.00 to Defendant's escrow account. (*Id.* at 7–8.)

## II. Sellers Refuse to Consummate Sale of Fiji Property

On July 3, 2017, Concierge also emailed the Fiji Property owners (the "Sellers"), congratulating them on the sale and sending a purchase contract (the "Purchase Agreement"). (TAC at 7–8.) On the same date, a representative of the Sellers responded to Concierge's email stating that they were surprised by the email because Concierge had previously stated that the auction would not go forward, and the Sellers were not willing to sign the Purchase Agreement. (*Id.* at 8.) Defendant was copied on the above emails. (*Id.*) Meanwhile, Plaintiffs were not aware that the Sellers were refusing to sell the Fiji

---

[1] The Joint Statement of Undisputed Material Facts is filed at ECF No. 144 and contains numbered statements of fact that are undisputed by the Parties. If a fact is undisputed, the Court will cite only to the numbered "Fact."

[2] The Parties dispute whether Defendant was licensed to do business in California and whether Defendant misrepresented its California-related licensing status on its website.

Property. (*Id.*) Therefore, on July 3, 2017, Plaintiff Howard Appel, on behalf of Plaintiffs, deposited an additional $185,000.00 in escrow with Defendant. (Fact 2.) In total, Plaintiffs deposited $285,000.00 with Defendant (the "Escrow Funds") in relation to the June 2017 auction of the Fiji Property. (Opp'n at 5.)

On July 7, 2017, Plaintiffs discovered the Sellers were refusing to sell the Fiji Property and execute the Purchase Agreement. (TAC at 9.) Plaintiffs assert that Defendant bears responsibility for the four-day delay in Plaintiffs learning about the Sellers' unwillingness to go forward with the sale of the Fiji Property, alleging that Defendants improperly failed to immediately provide them with the July 3, 2017 email that Defendant received from the Sellers. (Opp'n at 5.)

### III. Plaintiffs Initially Seek Return of Escrow Funds

On July 12, 2017, Plaintiffs asked whether Defendant would return their Escrow Funds and requested that Defendant provide them with "the escrow instructions."[3] (TAC at 9.) On July 13, 2017, Plaintiffs called Defendant three times seeking return of their Escrow Funds. (*Id.*)

### IV. Plaintiffs Attempt to Salvage the Deal and Decide to Not Seek Return of the Escrow Funds

On July 25, 2017, Plaintiffs began negotiating with the Sellers to salvage the property sale. (TAC at 9.) On or about September 13, 2017, Counsel for Plaintiffs sent a letter to Defendant, acknowledging: (1) that Defendant was holding $285,000.00 in escrow; (2) that the Sellers had refused to execute the Purchase Agreement; and (3) that because Plaintiffs were engaged in negotiations with the Sellers for the purchase of the Fiji Property, Plaintiffs were not seeking return of the $285,000.00 from escrow at that time. (MSJ at 3–4.) Defendant responded to that letter on September 15, 2017, informing

---

[3] The Parties disagree as to when the Plaintiffs sought the return of the Escrow Funds. Plaintiffs allege that they requested Defendant return the Escrow Funds on July 12, 2017, July 13, 2017, September 28, 2017, and May 1, 2018, but that Defendant continuously refused to comply with those requests. (*See generally* TAC; Opp'n.) Defendant counters that, on September 14, 2017, it received a letter from Plaintiffs stating that they were not seeking return of the Escrow Funds and that it was "some[]time later" that Plaintiffs sought return of the Escrow Funds. (MSJ at 4 (citing TAC at 10).)

Plaintiffs that: (1) Defendant had no knowledge of any "escrow instructions;" (2) there was no "escrow agreement" signed between Plaintiffs and Defendant; and (3) the only agreement Defendant knew of was the Bidder Agreement signed between Concierge and Plaintiffs. (TAC at 9.)

On September 26, 2017, Plaintiffs called Defendant. In response to that call, Defendant emailed Plaintiffs stating that it had a "fiduciary relationship with Concierge." Defendant also asked Concierge, who was copied as a recipient of the email, to inform Plaintiffs "of what is to take place if the seller refuses to sign the contract." (*Id.* at 10.)

On September 27, 2017, Concierge instructed Defendant not to disburse Plaintiffs' $285,000.00 Escrow Funds. (Fact 3.) On the same day, Defendant told Plaintiffs that if an agreement could not be reached, it would "interplead the funds to the appropriate court for disposition." (MSJ at 10.)

### V. Negotiations Fail and Plaintiffs Seek Return of Escrow Funds

On September 28, 2017, Plaintiffs informed Defendant that the negotiations with the Sellers had terminated, and Plaintiffs therefore asked Defendant to return their Escrow Funds. Plaintiffs also requested that Concierge instruct Defendant to return the funds. (Opp'n at 6; TAC at 10.) Defendant did not return the Escrow Funds and, according to the Plaintiffs, appeared to "have given Concierge complete control" over the funds. (*Id.*) Plaintiffs alleged that Defendant's Chief Compliance Officer, Mr. Keith Lewis, was the individual responsible for Defendant's decision to not return Plaintiffs' Escrow Funds. (*Id.*)

In October 2017, Defendant exchanged correspondence with Plaintiffs' Counsel confirming that Defendant required joint instructions for release of the Escrow Funds and referring Plaintiffs' Counsel to Concierge for further inquiry. (MSJ at 4.) According to Defendant, at that juncture, Defendant was prepared to return the funds once it received the joint instructions to do so. (*Id.*)

/ / /

/ / /

## VI. Plaintiffs Initiate Legal Proceedings

On November 6, 2017, Plaintiffs filed suit against Concierge for the return of the Escrow Funds and the "hundreds of thousands of dollars in attorney's fees" incurred. (TAC at 11; *see also Appel v. Concierge Auctions, LLC*, No. 17-CV-2263 BAS (MDD) (S.D. Cal. filed Nov. 6, 2017) (the "Concierge case").) Concierge commenced an arbitration proceeding in New York and told Plaintiffs that if they paid $37,500.00, Concierge would dismiss the proceeding and would instruct Defendant to release the funds. (*Id.*) Plaintiffs did not pay, and the Concierge case proceeded. The Court stayed the Concierge case and directed the parties to arbitration. (*See* Concierge case ECF No. 30.)

On April 30, 2018, Plaintiffs asked Defendant to verify the amount of their Escrow Funds and to send them copies of any escrow instructions or valid agreements governing the escrow. (TAC at 11.) On May 1, 2018, Plaintiffs again instructed Defendant to return the Escrow Funds. (Opp'n at 7.) In response, Defendant stated that Plaintiffs "previously directed no funds be released at all, which was agreed to as there was no contract in place." (TAC at 12.) On May 22, 2018, Defendant received, for the first time, consenting instructions from Concierge allowing release of the Escrow Funds, and on May 23, 2018, Defendant received instructions from Plaintiffs directing release of the Escrow Funds to their Counsel. (MSJ at 6.) On May 24, 2018, Defendant returned the $285,000.00 Escrow Funds to Plaintiffs. (Fact 4.)

On May 4, 2018, Plaintiffs filed the present suit against Defendant alleging breach of fiduciary duty, negligence, and accounting. (ECF No. 1.) On May 21, 2019, Plaintiffs filed the first amended complaint alleging nine causes of action. (ECF No. 73.) On June 4, 2019, Defendant filed a motion to dismiss the first amended complaint, (ECF No. 77), which the Honorable Cynthia Bashant granted in part with leave to amend. On November 21, 2019, Plaintiffs filed the present complaint, the Third Amended Complaint, (ECF No. 99), due to an erroneous filing of the second amended complaint. (*See* ECF Nos. 95–98.) The Third Amended Complaint alleges causes of action for breach of fiduciary duty, negligence, accounting, violation of California's Unfair Competition Law (UCL)

under California Business and Professions Code §§ 17200 *et seq.*, fraudulent concealment, fraudulent misrepresentation, negligent misrepresentation, violation of California's False Advertising Law under California Business and Professions Code §§ 17500 *et seq.*, conversion, and punitive damages. (*See generally* TAC.) On December 5, 2019, Defendant filed a motion to dismiss the Third Amended Complaint, (ECF No. 101), which Judge Bashant granted in part without leave to amend. (ECF No. 106.) On November 23, 2020, Defendant filed a Motion to Dismiss for Lack of Standing and a Motion for Summary Judgment, or in the alternative, Partial Summary Judgment. (ECF No. 126.)

## MOTION TO DISMISS

Defendant requests this entire action be dismissed for lack of standing because Plaintiff has suffered no injury-in-fact. (*See* MSJ at 7–10.) Specifically, Defendant argues that Plaintiffs no longer have an injury-in-fact because Defendant returned the $285,000.00 Escrow Funds in 2018, and Plaintiffs suffered no other injury due to Defendant's withholding of the Escrow Funds for approximately ten months.[4] (*Id.*)

Federal courts are courts of limited jurisdiction, and as such have an obligation to dismiss claims for which they lack subject-matter jurisdiction. *Demarest v. United States*, 718 F.2d 964, 965 (9th Cir. 1983). Because the issue of standing pertains to the subject-matter jurisdiction of a federal court, motions raising lack of standing are properly brought under Federal Rule of Civil Procedure 12(b)(1), *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000), and are generally addressed before other challenges on the merits. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). To establish standing, the plaintiff has the burden of showing "(1) he has suffered an 'injury in fact' that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to

---

[4] Defendant also asserts that Plaintiffs' claims regarding alleged misrepresentations about Defendant's licensing, false advertising, or unfair business practices are based on the false premise that Defendant misrepresented its ability to conduct escrow in California; that Plaintiff Cohen signed the Purchase Agreement, which stated that it would not be an interest bearing account; and that Plaintiffs irrevocably released Defendant in the Bidder Agreement, precluding them from being able to maintain this action, all of which Plaintiffs dispute. (*See* MSJ at 7–10; *see generally* Opp'n.)

merely speculative, that the injury will be redressed by a favorable decision." *Braunstein v. Ariz. Dep't of Transp.*, 683 F.3d 1177, 1184 (9th Cir. 2012) (citing *Bernhard v. Cty. of L.A.*, 279 F.3d 862, 868–69 (9th Cir. 2002)). To qualify as an injury-in-fact, an alleged harm must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc.*, 528 U.S. 167, 180 (2000). Each element of standing "must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "'[A] plaintiff must demonstrate standing for each claim he seeks to press' and 'for each form of relief that is sought.'" *Davis v. Fed. Elec. Comm'n*, 554 U.S. 724, 734 (2008) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

Here, Plaintiffs establish economic injury, which is "clearly a sufficient basis for standing." *See San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996). Among other things, Plaintiffs demonstrate that they were deprived of pre-judgement interest when Defendant allegedly withheld the Escrow Funds and/or surrendered control of those funds to Concierge. (*See* MTD at 9 (claiming entitlement to $25,704.48 interest)); *see also N. Oakland Med. Clinic v. Rogers*, 65 Cal. App. 4th 824, 830 (1998) ("It is well established that prejudgment interest is . . . an element of damages."). Plaintiffs also seek to recoup the funds expended to recover the Escrow Funds, as evidenced by the fact that Plaintiffs incurred costs and fees to file this lawsuit before Defendant returned the Escrow Funds. (*See* ECF No. 1); *see also Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 286 (1997) (payment of an allegedly improper tax sufficient to confer Article III standing). Because Plaintiffs have established potential economic injuries, the Court **DENIES** Defendant's Motion to Dismiss for Lack of Standing.

## MOTION FOR SUMMARY JUDGMENT

### I. Legal Standard

Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment as to a claim or defense or part of a claim or defense. Summary judgment is

appropriate where the Court is satisfied that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The moving party may meet this burden by identifying the "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that show an absence of dispute regarding a material fact. *Id.* When a plaintiff seeks summary judgment as to an element for which it bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324. This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for the non-moving party. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256.

///

## II. Analysis

### A. *Accounting*

Plaintiffs seek an accounting to determine "[t]he Escrow Funds balance, any use o[r] profits realized through the Escrow Funds, and any interest earned while the Escrow Funds were on deposit with Boston National." (TAC at 13.) "An accounting cause of action is equitable and may be sought where the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable." *Hamilton v. Bank of Blue Valley*, 746 F. Supp. 2d 1160, 1175 (E.D. Cal. 2010) (citing *Civic W. Corp. v. Zila Indus., Inc.*, 66 Cal. App. 3d 1, 14 (1977)). To succeed in a claim for accounting, a plaintiff must demonstrate (1) a fiduciary relationship, and (2) "an unknown balance due from the [d]efendant[] that cannot be ascertained without an accounting." *Baker v. Varitalk, Inc.*, No. CV 07-6622-VBF(FFMx)m 2008 WL 11319707, *4 (C.D. Cal. Feb. 6, 2008); *see also Kritzer v. Lancaster*, 96 Cal. App. 2d 1, 6–7 (1950).

Here, the Parties do not dispute the existence of a fiduciary relationship between them; however, the Parties disagree as to whether the balance owed to Plaintiff, if any, is readily ascertainable. According to Defendant, the only sum it has ever owed Plaintiffs is the readily ascertainable Escrow Funds in the amount of $285,000.00, which have already been returned. Plaintiffs, on the other hand, assert that the true balance owed goes well beyond the Escrow Funds because Defendants unlawfully withheld and profited from those funds for several months. (Opp'n at 13.) Because of this genuine dispute of material fact, the Court **DENIES** Defendant summary judgment on Plaintiffs' accounting claim. *See Maksoud v. Hopkins*, No. 17-CV-00362-H-WVG, 2018 WL 5920036, at *8 (S.D. Cal. Nov. 13, 2018) (denying summary judgment on an accounting claim because the plaintiff has demonstrated a genuine dispute of material fact showing there is some unknown balance possibly due to him from complicated transactions involving alleged misappropriation of his investment).

///

///

### B.     *Negligence and Breach of Fiduciary Duty*

To prevail on a claim for breach of fiduciary duty or negligence, a plaintiff must establish that the defendant injured them by breaching a duty owed to them. *See Tribeca Cos. v. First Am. Title Ins. Co.*, 239 Cal. App. 4th 1088, 1114 (2015) (elements for negligence); *Pierce v. Lyman*, 1 Cal. App. 4th 1093, 1101 (1991) (elements for breach of fiduciary duty). Although it is undisputed that Defendant, as an escrow holder, owned Plaintiffs fiduciary duties, *see Summit Fin. Holdings, Ltd. v. Cont'l Lawyers Title Co.*, 27 Cal. 4th 705, 711 (2002), Defendant argues that it is entitled to summary judgment on both Plaintiffs' negligence and breach of fiduciary duty claims because there is no genuine dispute of material fact that Defendant breached any duty owed to Plaintiffs. (*See* MSJ at 15.)

Defendant makes two arguments, which the Court addresses individually. First, Defendant contends that Plaintiffs provide no evidence that it either misused the funds or transferred them to Concierge. (MSJ at 16.) Plaintiffs respond that Defendant breached its duties to them by failing to comply with their instructions for the return of the Escrow Funds and by giving control over the Escrow Funds to Concierge. (Opp'n at 17.) The Court agrees with Defendant that Plaintiffs fail to provide evidence raising a genuine dispute of material fact that Defendant misused the Escrow Funds or gave control of them to Concierge. Plaintiffs rely on the fact that they repeatedly requested a return of their funds but Defendant failed to comply, as well as an email from Concierge to Defendant providing: "[W]e appreciate your cooperation and that you will not disburse the $285k in escrow unless we provide instructions." (*Id.*) This evidence, however, establishes that Defendant—not Concierge—retained control over the Escrow Funds. Further, Plaintiffs' evidence fails to demonstrate that Defendant misused the Escrow Funds in any way.

Second, Defendant argues that it did not breach any duty owed to Plaintiffs. Defendant contends that not only was it not a party to the Bidder Agreement, but that its only duty to Plaintiffs was to hold the Escrow Funds and transfer them according to the instructions of both parties, which conflicted. (MSJ at 15.) Plaintiffs counter that

Defendant, by virtue of being an escrow agent, had fiduciary duties to them and that Defendant breached those duties by failing to communicate material facts, including the Sellers' understanding that the auction had been cancelled and refusal to sign the Purchase Agreement. (Opp'n at 16.)

Defendant fails to establish the absence of genuine dispute of material fact as to whether it breached its fiduciary duties to Plaintiffs. While Defendant is correct that it had a duty to follow the parties' escrow instructions and that it generally has no duty to police the affairs of its depositors, *see Summit*, 27 Cal. 4th at 711, Plaintiffs are also correct that Defendant owed them "a duty to communicate . . . with respect to material facts [that] might affect the principal's decision as to a pending transaction," regardless of any duties Defendant had or did not have according to the Bidder Agreement. *See Axley v. Transam. Title Ins., Co.*, 88 Cal. App. 3d 1, 9 (1978). It is undisputed that Defendant was copied on the July 3, 2017 email from the Sellers indicating their intention not to move forward on the sale of the Fiji Property, (ECF No. 138-4 Ex. 5), and Defendant does not deny that it failed to disclose this fact to Plaintiffs. Given the material factual disputes concerning Defendants' duties and breaches of those duties—elements essential to both Plaintiffs' breach of fiduciary duty and negligence claims—the Court **DENIES** summary judgment on these claims.

### C. *Violation of California's Unfair Competition and False Advertising Laws*

Plaintiffs also seek to recover from Defendant under California's UCL and FAL. (*See* TAC at 15–17, 21–22.) The UCL prohibits "any unlawful, unfair or fraudulent business act or practice," *see* Cal. Bus. & Prof. Code § 17200, and the FAL prohibits a business from disseminating any statement "which is untrue or misleading, and which is known, or by the exercise of reasonable care, should be known, to be untrue or misleading." *See* Cal. Bus. & Prof. Code § 17500. "[T]o state a claim under either the UCL or the false advertising law . . . 'it is necessary only to show that members of the public are likely to be deceived.'" *Kasky v. Nike Inc.*, 27 Cal. 4th 939, 951 (2002). "'Likely to deceive' . . . indicates that the ad is such that it is probable that a significant portion of the general

consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).

Plaintiffs allege Defendant violated California's UCL and FAL by falsely advertising that it was licensed as an escrow agency and to do business in California. (TAC at 15, 21.) Defendant responds that it is licensed to provide escrow services in California as "BNT Title Company of California," and, consequently, Defendant's website was accurate. (Mot. at 19 (citing ECF No. 126-8 ("Lewis Decl.") Exs. 45–48).) Defendant also argues that Plaintiffs cannot establish they relied on Defendant being licensed in California to participate in the June 2017 auction. (*Id.*) Plaintiffs respond that no evidence supports that Defendant, rather than "BNT Title Company of California," is licensed in California. (Opp'n at 22.) Plaintiffs further argue that they reviewed Defendant's website for licensing information prior to the auction, which represented that Defendant "is [directly] licensed [to provide services and issue title policies] in 42 states [plus] the District of Columbia," and that, had Defendant disclosed it was not licensed to conduct business in California, Plaintiffs would not have used its escrow services. (*Id.* (citing Appel & Cohen Decls.).) Because there exist genuine disputes material fact as to whether Defendant falsely advertised that it was licensed as an escrow agent and to do business in California and as to whether Plaintiffs relied upon this representation, the Court **DENIES** summary judgment as to Plaintiffs' UCL and FAL claims.

### D.   *Fraudulent Concealment*

On June 10, 2020, Judge Bashant dismissed a portion of Plaintiffs' fraudulent concealment claim in the Third Amended Complaint. (ECF No. 106 at 11.) Plaintiffs' surviving claim is that Plaintiffs would not have deposited the Escrow Funds or proceeded with the purchase of the Fiji Property had Defendant not concealed the Sellers' refusal to sell. (TAC at 18.) Fraudulent concealment consists of five elements:

> (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been

unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.

*Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 850 (2009). "Intent to defraud" "can be satisfied by circumstantial evidence." *Moses v. Harward*, No. No. C-12-05271 EDL, 2014 WL 12577167, at *15 (N.D. Cal. May 27, 2014); *see also Santoro v. Carbone*, 22 Cal. App. 3d 721, 727 (1972) ("Since direct proof of fraudulent intent is often impossible, the intent may be established by inference from acts of the parties.").

Defendant argues that Plaintiffs do not provide any evidence of the third element—intent to defraud—because after Plaintiffs determined that negotiations with the Sellers had failed, Plaintiffs claim to have requested return of the Escrow Funds, while Concierge instructed Defendant to hold the funds. (MSJ at 29.) Given these conflicting demands, Defendant waited to receive consistent instructions before releasing the funds, which it did on May 24, 2018. (*Id.*) Defendant also contends it was transparent in its communications with Plaintiffs by referring Plaintiffs to Concierge to resolve any dispute arising out of the June 2017 auction or the Bidder Agreement. (*Id.*)

Plaintiffs, on the other hand, claim that Defendant intentionally withheld from them communications regarding the Seller's refusal to sell the Fiji Property because Defendant wanted to maintain its business relationship with Concierge. (Opp'n at 25.) To raise a genuine issue of material fact as to Defendant's intent to defraud, Plaintiffs rely heavily on the deposition of one of Defendant's employees, Ms. Irenelle Redfearn, whom they claim testified that: (1) Concierge accounts for 75 to 100 percent of Defendant's accounts,[5] (2) she did not forward all emails that Concierge sent her because she did not feel that it was her duty to do so, (3) she believes Defendant had fiduciary duties to Concierge with regard to the $285,000.00, and (4) she does not know why Defendant had unilateral

---

[5] Contrary to Plaintiffs' representation, Ms. Redfearn actually testified that Concierge accounted for 75 to 100 percent of the accounts that she personally handles for Defendant. (ECF No. 138-4 Ex. 5.) Plaintiffs fail to introduce any evidence as to the percentage of Defendant's total business attributable to Concierge.

communications with Concierge regarding the $285,000.00. (Opp'n at 25 (citing ECF No. 138-4 Ex. 5).) Plaintiffs also cite to the deposition of Mr. Lewis, who testified that Defendant did not forward the email from the Sellers regarding the cancellation of the auction to Plaintiffs and that Defendant reached out to Concierge for direction after hearing from Plaintiffs. (*Id.* (citing ECF No. 138-4 Ex. 6.) Even viewing this evidence most favorably to Plaintiffs, Defendant's belief that it owed a fiduciary duty to Concierge—erroneous or not—fails to raise a genuine dispute of material fact that Defendant intended to defraud Plaintiffs to preserve its business relationship with Concierge. *See Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine disputes of fact and defeat summary judgment."). Because Plaintiffs fail to demonstrate that they can meet their burden as to Defendant's fraudulent intent, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiffs' fraudulent concealment claim.

### E.   *Fraudulent and Negligent Misrepresentation*

On June 10, 2020, Judge Bashant dismissed a portion of Plaintiffs' fraudulent misrepresentation and negligent misrepresentation claims, (ECF No. 106 at 12), leaving only Plaintiffs' claim that they only wired the Escrow Funds to Defendant because Defendant misrepresented that it could perform escrow services in California. (TAC at 20.) The elements of a claim for intentional misrepresentation are: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004). The elements for negligent misrepresentation are the same, except that the plaintiff need not establish the defendant's intent to defraud. *Wells Fargo Bank, N.A. v. FSI Fin. Solutions, Inc.*, 196 Cal. App. 4th 1559, 1573 (2011).

Defendant argues that Plaintiffs fail to establish that they justifiably relied on its licensure in California before participating in the June 2017 auctions. (MSJ at 23.) According to Defendant, other than allegedly viewing its website, Plaintiffs did not seek

out or rely upon any licensing information prior to participating in the June 2017 auction or distributing the Escrow Funds. (*Id.*) But Plaintiffs attest that they did view Defendant's website, (*see* Appel Decl. ¶ 2; Cohen Decl. ¶ 2), meaning there exists a genuine dispute of material fact as to Plaintiffs' reliance on the claims Defendant made concerning its registration to conduct business and to provide escrow services in the State of California. Accordingly, the Court **DENIES** summary judgment as to Plaintiffs' fraudulent and negligent misrepresentation claims.

### F. Conversion

Plaintiffs claim that Defendant converted the Escrow Funds by failing timely to return them at their request. (TAC at 22–23.) The elements of a conversion claim are: "(1) the plaintiffs' ownership or right to possession of the property; (2) the defendants conversion by a wrongful act or disposition of property rights; and (3) damages." *Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015) (citations omitted). To maintain a conversion action, "it is not essential that the plaintiff shall be the absolute owner of the property converted but she must show that she was entitled to immediate possession at the time of conversion." *Bastanchury v. Times-Mirror Co.*, 68 Cal. App. 2d 217, 236 (1945).

Defendant contests both the first and third elements. As for the third, the Court has already concluded that Plaintiffs may establish economic injuries caused by Defendant's refusal to return the Escrow Funds. *See supra* page 7. Regarding the first element, Defendant argues that Plaintiffs cannot prove that they had a right to possession of the Escrow Funds because, as Plaintiffs concede, they attempted to salvage the deal between July 25, and September 13, 2017. (MSJ at 25 (citing TAC at 9); Reply at 9.) Plaintiffs respond that they were entitled to possession of the funds on July 3, 2017, when Defendant was advised by the Sellers that they were not willing to sell the Fiji Property, and also on July 12, 2017, July 13, 2017, September 18, 2017, and May 1, 2018, when Plaintiffs instructed Defendant to return the Escrow Funds. (Opp'n at 28.) Defendant disputes that it was advised on July 3, 2021, that the Sellers would not sell the Fiji Property and that it was able to return the Escrow Funds until it had joint instructions. (Reply at 9–10.)

15

18-CV-873 TWR (AHG)

Given Plaintiffs' admission that they continued to negotiate the sale through September 13, 2017, Plaintiffs were not entitled to possession of the Escrow Funds until that date. *See In re Bailey*, 197 F.3d 997, 1000 (9th Cir. 1999) (holding the complaining party must prove she was "entitled to immediate possession [of the converted property] at the time of conversion). On September 28, 2017, however, Plaintiffs informed Defendant that negotiations ended and demanded the return of the Escrow Funds. (Opp'n at 6; TAC at 10.) Because there exist genuine disputes of material fact as to whether Defendant converted the Escrow Funds after that date, the Court **DENIES** Defendant summary judgment on Plaintiffs' conversion claim.

### G. *Punitive Damages*

Finally, Plaintiffs pray for punitive damages. (TAC at 22–25.) The availability of punitive damages here is a question of state law. (*See* MSJ at 26–27; Opp'n at 29–30); *see also Cent. Office Tel., Inc. v. Am. Tel. & Tel. Co.*, 108 F.3d 981, 993 (9th Cir. 1997), *rev'd on other grounds*, 524 U.S. 214, 228 (1998). To obtain punitive damages under California law, a plaintiff must establish "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). To maintain a claim for punitive damages against a corporation, a plaintiff must demonstrate oppressive, fraudulent, or malicious conduct on behalf of an officer, director, or managing agent of the corporation. *See* Cal. Civ. Code § 3294(b).

Plaintiffs contend that Defendant's Chief Compliance Officer, Mr. Lewis, "acted maliciously," by refusing Plaintiffs' repeated demands for the return of their funds despite Defendant's knowledge that the Sellers refused to sell the Fiji Property. (TAC at 10–11.) Although such allegations may suffice at the pleading stage, Plaintiffs have provided no evidence that Mr. Lewis acted oppressively, fraudulently, or maliciously. *See supra* pages 13–15 (concluding that Plaintiffs failed to raise a genuine dispute of material fact concerning Defendant's fraudulent intent); *see also* Cal. Civ. Code § 3294(c) (defining "malice," "oppression," and "fraud"). The Court therefore **GRANTS** Defendants summary adjudication as to Plaintiffs' request for punitive damages.

## CONCLUSION

In light of the foregoing, the Court **DENIES** Defendant's Motion to Dismiss for Lack of Standing and **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment (ECF No. 126). Specifically, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiffs' cause of action for fraudulent concealment and prayer for punitive damages and **DENIES** Defendant's Motion for Summary Judgment as to Plaintiffs' causes of action for accounting, breach of fiduciary duty, negligence, violations of the California's Unfair Competition Law and False Advertising Law, fraudulent misrepresentation, negligent misrepresentation, and conversion.

**IT IS SO ORDERED.**

Dated: September 17, 2021

Honorable Todd W. Robinson
United States District Court